**Airo Supply Company, Appellant, v. Thomas Page, Appellee, Automatic Electric Company, Garnishee.**

**Gen. No. 46,206.**

Opinion filed May 3, 1954.
Released for publication May 27, 1954.

LEES, BUNGE & THUMA, of Chicago, for appellant;
GEORGE C. BUNGE, GEORGE HAMILTON BUNGE, and MAR-
VIN F. METGE, all of Chicago, of counsel.

ALBERT HEALY WERNER, of Chicago, for appellee;
CHARLES D. SNEWIND, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the
court.

Plaintiff Airo Supply Company appeals from an or-
der abating garnishment proceedings based upon a
judgment for $14,775.77 in favor of plaintiff and
against defendant Thomas Page. By that order the
court released $53.79 of wages due defendant and dis-
missed the proceedings.

No evidence was adduced upon the hearing, but it
appears from the undisputed facts set forth in the
pleadings that defendant had been employed by plain-
tiff from August 1, 1944 to March 19, 1947 as its only
bookkeeper, with sole charge of its cash accounts. Dur-

ing that period he misappropriated $14,775.77 of plaintiff's money to his own use and had so manipulated the books as to conceal his defalcations. He admitted taking these sums, surrendered to the State's Attorney of Cook county, was indicted by the Cook county grand jury for embezzlement of plaintiff's funds and pleaded guilty to plaintiff's charge; a judgment of guilty was entered on the plea. The complaint in this proceeding asked "that a malice judgment be entered against the defendant in the sum of $14,775.77 and that a malice body execution issue forthwith."

Subsequently, on June 30, 1949, plaintiff served notice on defendant in Joliet Penitentiary that a motion for default would be made, and on that day a default order was entered against defendant for failure to appear and answer. July 1, 1949 there was filed in the office of the clerk of the superior court a letter from the warden of Joliet Penitentiary enclosing a written notice for defendant stating that he was incarcerated in the penitentiary and requesting that action in his case be postponed until his release.

September 29, 1949 a judgment order was entered reciting that default had been entered against defendant on June 30, 1949, assessing plaintiff's damages at the sum of $14,775.77 and entering judgment for that amount, together with a finding that "malice is the gist of the plaintiff's action . . . , and the court hereby orders that a malice body execution issue forthwith."

October 27, 1949 defendant, by his counsel, filed a petition to vacate that judgment, stating that defendant was then incarcerated in the penitentiary, unable to appear or defend himself, but that he would be discharged from detention on or about November 5, 1949. The petition prayed that the judgment entered September 29, 1949 be vacated, and that defendant be granted leave to enter an appearance and to confer

266

with his counsel after his release for the purpose of preparing his defense. The petition did not state the nature of his defense nor that he had a meritorious one.

January 19, 1950 an amended judgment order was entered by agreement of the parties, approved by counsel for both sides, vacating the judgment previously entered, finding the issues in favor of plaintiff and against defendant, assessing plaintiff's damages in the sum of $14,775.77, and providing for the entry of judgment in favor of plaintiff and against defendant for precisely the same amount. However, the last paragraph of the order read as follows: "It is further ordered after an examination of the facts in the premises that malice is not the gist of the Plaintiff's action and the request for a malice body execution is denied."

Thereafter, on March 16, 1953, these garnishment proceedings were commenced, and notice of wage demand and garnishment summons were served on the Automatic Electric Company, as garnishee, by which defendant was then employed. Four days later defendant filed a motion to abate the proceedings, in which he alleged that he had filed his voluntary petition in bankruptcy in the United States District Court on July 3, 1952, that plaintiff's judgment was duly scheduled therein, and that on February 10, 1953 he was discharged by the bankruptcy court. Attached to the petition was a certified copy of schedule A–3 of defendant's bankruptcy petition showing that the only claims scheduled by him were plaintiff's judgment for $14,775.77 and an indebtedness to the Commonwealth Loan Company of $300. A certified copy of defendant's discharge in bankruptcy was also attached as an exhibit. The petition prayed that further proceedings be abated, and that the monies withheld by the garnishee be released to the defendant. On April 1, 1953 the garnishee filed an answer stating that, after allowing ex-

267

emptions claimed by defendant, the garnishee held a balance of $53.79 due defendant as wages for work performed by him.

March 30, 1953 plaintiff filed its answer to defendant's motion or petition, stating that plaintiff's judgment was not discharged in bankruptcy because it was based upon an obligation by defendant Thomas Page " 'created by his fraud, embezzlement, misappropriation, or defalcation while acting . . . in any fiduciary capacity,' " within the meaning of section 35, title 11, U. S. C. A. The answer further averred that shortly before the entry of the amended judgment on January 19, 1950 defendant executed and delivered to plaintiff a certain statement and confession, and that the amended judgment was based upon that statement. The statement, as set up in the answer, read in part as follows: " 'During my employment by Airo Supply Co., I converted money of my employer, Airo Supply Co., to my own use. The total amount converted by me to my own use . . . was $14,775.77 . . . . I am hereby admitting that I took this money, and that I converted it to my own use, and that it is my intention to repay this money in installments, if possible.' " No reply was filed to this answer, and on April 15, 1953 the issues made up by the petition and answer were heard by the court; at the conclusion of the hearing the trial judge took the cause under advisement, and subsequently, on May 8, 1953 entered the order abating and dismissing the garnishment proceeding, from which order this appeal has been taken.

 Upon this state of the record the question presented is whether plaintiff's claim for the recovery of funds which defendant, its former employee, admittedly embezzled or misappropriated, is released by defendant's discharge in bankruptcy. Section 35, title 11, U. S. C. A. reads as follows: "A discharge in bank-

ruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." There can be no doubt that the debt, which was reduced to judgment by agreement of the parties, was created by defendant's fraud, embezzlement, misappropriation or defalcation; this charge is not denied. It is conceded that defendant was not acting as an officer of the corporation; the inquiry is thus narrowed to whether he was acting in any fiduciary capacity. He argues that the phrase "in any fiduciary capacity," as used in the Bankruptcy Act, embraces only technical trusts and not trusts which are implied in a contract or in the position of the parties, and that the finding in the judgment order that "malice is not the gist of Plaintiff's action" was in effect equivalent to a finding that he was not guilty of fraud, dishonesty or bad faith. It is a plausible assumption that defendant's purpose in inducing plaintiff to consent to have the original judgment vacated, and an amended judgment entered in its place, was to exclude the possibility, upon his release from the penitentiary, of his being committed to jail under the body execution issued in the first order. Accordingly, he gave plaintiff a written confession, accompanied by his promise to pay the embezzled funds in installments, and thereby persuaded plaintiff's counsel to eliminate the malice finding from the judgment. The Supreme Court of Illinois has held that malice findings in judgments are highly technical and serve a special and limited purpose. In *Ingalls v. Raklios*, 373 Ill. 404, the court said that "it is apparent that a defendant could be actuated by malice in committing a tort against the plaintiff and yet malice not be the gist of the action." It follows that if a defendant can be actuated by

269

malice in committing a tort, and yet malice not be the gist of the action, a finding that "malice is not the gist of the Plaintiff's action" is not a finding that defendant was not actuated by malice. Accordingly, we think the finding in the instant judgment does not negative the existence of malice or establish that the debt was not created by "fraud, embezzlement, misappropriation or defalcation." In the most charitable interpretation of defendant's course of conduct, he was certainly guilty of defalcation. The underlying principle is stated as follows in 8 C. J. S. Bankruptcy, § 578 c (p. 1541) : "Defalcation as used in the provision of the act under discussion is said to be of broader meaning than embezzlement or misappropriation. An act need not be shown to be willful or malicious to constitute a defalcation. Hence one acting as an officer or fiduciary who is under a duty to account for funds in his control commits a defalcation when he fails to account and pay over such funds in accord with his duty." See also the rule as stated in 6 Am. Jur. (Rev. Ed.), Bankruptcy, § 797 (p. 1020).

 Was defendant, as a bookkeeper, and in sole charge of plaintiff's cash accounts, acting in a fiduciary capacity? Plaintiff cites various decisions which we regard as in point and controlling. In *Citizens Mut. Automobile Ins. Co. v. Gardner,* 315 Mich. 689, 24 N.W.2d 410, plaintiff obtained a judgment against defendant, an insurance agent, for premiums which defendant had collected and failed to remit. Garnishment proceedings were then instituted on the judgment, which defendant moved to dismiss, based on a discharge in bankruptcy which he had obtained after the entry of the judgment. The court held that his discharge in bankruptcy did not prevent the enforcement of the judgment, since it clearly appeared from the record in the case in which judgment was entered that

defendant's obligation to the plaintiff arose from his failure to remit the insurance premiums that he had collected. The court concluded that this constituted a defalcation within the meaning of the Act; and with respect to a contention similar to defendant's in the instant proceeding, the court said that "for the purposes of this case it may be assumed that defendant was not shown to have been guilty of fraud, embezzlement or misappropriation, but it does not follow that there was no defalcation on his part within the meaning of the term as used in the bankruptcy act. It has been repeatedly held that one who, acting in a fiduciary capacity, fails to observe his duty to make payment of money coming into his possession in such capacity, places himself, by such failure, within the scope of the term 'defalcation.' "

In *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, a foreclosure suit, a receiver was allowed a certain sum of money for fees and expenses, set up as an intermediate account. He withdrew the amount allowed and spent it before the time to appeal expired. The unsuccessful plaintiff, however, appealed from the order; the allowances were disallowed, and judgment was entered against the receiver for the amount withdrawn. He then went through bankruptcy and claimed that his discharge barred any further claim on the judgment. The court held that the claim was based on a "defalcation" for the purposes of the Bankruptcy Act and therefore was not barred by defendant's discharge, even though it be assumed that defendant withdrew the funds in question in good faith and in the belief that he was entitled to them.

In *First Citizens Bank & Trust Co. v. Parker,* 225 N. C. 480, 35 S.E.2d 489, plaintiff had recovered a judgment against a former guardian for certain sums for which he had failed to account. The court held that the

claim based on this judgment was not barred by the guardian's discharge in bankruptcy, irrespective of any question of good faith, and said: "We must assume that Congress, in using the word 'defalcation' in Sec. 17 of the Bankruptcy Act, 11 U. S. C. A. § 35, was not engaged in the redundant use of synonymous words but included the term for a purpose. It was intended to cover defaults other than malversations implied by 'fraud,' 'embezzlement,' and 'misappropriation,' else it adds nothing to those terms. 'Defalcation' as used in a criminal statute implies some moral dereliction, but in this context it is a broader term and includes any failure of a guardian or other person acting in a fiduciary capacity to account for trust funds. It means the failure of a fiduciary to account for money received in his fiduciary capacity."

Defendant's cases can be readily distinguished. For instance, in *Levine v. Levine,* 27 N.Y.S.2d 299, the court held that the proof expressly disclosed a wilful and malicious conversion of the judgment creditor's property by the judgment debtor, so that the judgment by confession was not a dischargeable debt—a conclusion rather favoring plaintiff's position. In *Stephens v. Milikin,* 35 Ga. App. 287, 133 S. E. 67, partnership problems were involved which have no similarity to the facts in the case at bar. The partner charged with embezzlement had a direct personal interest in the subject matter. In *Davis v. Aetna Acceptance Co.,* 293 U. S. 328, defendant, an automobile dealer, borrowed money from plaintiff for the purpose of buying cars, and, as consideration for his loan in connection with a particular car, gave a promissory note, a chattel mortgage, a trust receipt and a bill of sale. He then sold the car without obtaining the consent of plaintiff, which he was required to do by the terms of the trust receipt. Plaintiff brought suit for the amount of the loan and con-

tended that the debt thus established was not dischargeable in bankruptcy. The court held that all the transactions involved, when considered together, amounted to a mortgagor-mortgagee relationship, and that the only breach by defendant was of its covenant to obtain the consent of the plaintiff before making its sale, and that the claim was therefore dischargeable in bankruptcy. It was the interest of defendant in the subject matter as a mortgagor in possession with a right of sale that actuated the court to hold that plaintiff had only a contract to rely upon for the collection of the debt, and of course the failure to obtain the consent of plaintiff before making the sale, although it gave plaintiff a right of action for breach of contract, did not furnish grounds for a suit for embezzlement or misappropriation.

All the circumstances of record clearly indicate that defendant occupied a position of trust. He handled plaintiff's funds and admits that he embezzled and wrongfully "converted" them while he was occupying this position. As plaintiff's counsel point out, defendant was not the "honest debtor" whom the Bankruptcy Act was intended to aid; both the letter of the law and every consideration of justice and public policy require that he be compelled to repay the money he misappropriated.

Accordingly, we hold that the court erred in abating and dismissing the garnishment proceeding. The judgment of the superior court is therefore reversed, and the cause remanded with directions that judgment be entered on the garnishment in favor of plaintiff.

*Judgment reversed and cause remanded with directions.*

NIEMEYER, P. J. and BURKE, J., concur.