**In the Matter of Hoyt F. KELLEY, Bankrupt.**

**No. 79993.**

United States District Court
N. D. California, S. D.

Sept. 21, 1965.

Cottrell, Hofvendahl & Roessler and John N. Norman, San Jose, Cal., for respondents.

Watson, Tedesco, & Sanquinetti, San Jose, Cal., for the bankrupt.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an appeal from the Order of the Referee in Bankruptcy wherein the debt of the Bankrupt to respondents was held to be a willful and malicious injury to the property of another within the meaning of the Bankruptcy Act, Sec. 17a (2), 30 Stat. 550 (1898), 11 U.S.C. § 35a (2) (1964) and thus not dischargeable.

The findings of fact by the Referee and the evidence in the record disclose that the following transactions took place with regard to the debt in question. On September 1, 1960, and all times important herein, the bankrupt was President of Century Enterprises, Inc., (hereinafter referred to as "Century"), a California corporation, and that one Earl J. Messier was Vice-President of said corporation. The bankrupt and Messier were the sole owners and managers of Century. On the above date the bankrupt and Messier, acting on behalf of Century, entered into an agreement with respondents which provided that funds deposited by respondents with Century would be "maintained in a Trust Account at a bank," that funds in said trust account would not be withdrawn except upon the simultaneous assignment to the respondents of valid promissory notes secured by deeds of trust in the amount of withdrawal, and that respondents would receive a return of 20% on their funds deposited with Century. At the time of this agreement the respondents deposited $6,000 with Century, and on September 6, 1960, they deposited the further sum of $1,500 with Century.

On October 21, 1960, the bankrupt and Messier, both acting on behalf of Century, entered into an agreement of modification with the respondents whereby they modified their agreement of September 1, 1960. Under the modification the respondents transferred eleven promissory notes and deeds of trust to Century and Century agreed to credit the sum of $25,975.51 to the trust account of respondents. This modification also provided that Century would pay respondents 20% per annum return on respondents' balance of $33,475.51 in monthly payments of $567.79.

From November 1, 1960, to May 1, 1962, the respondents received $567.79 monthly for a total of $10,788.01. Thereafter, Century failed to make any further payments to the respondents. As found by the Referee, and which we accept as true, the "bankrupt failed to deposit and maintain" the funds he received from the respondents "in the trust account at a bank, but comingled said funds with his own personal funds, and converted the same to his own personal use and benefit."

On January 10, 1963, the bankrupt and his wife, and Century Enterprises, Inc., entered into an agreement with respondents in order "to amicably settle the matters existing between them and to avoid litigation." In the execution of this agree-

ment respondents had the benefit of advice by their own attorney.

The agreement provides that the Bankrupt and his wife, in their individual capacities, and Century Enterprises, Inc., would execute and deliver their promissory note in "the sum of $18,444.13, payable at $500.00 per month or more, including interest at the rate of ten (10%) percent on the declining balance from January 1, 1963, with installments due on the first day of each and every month commencing March 1, 1963." The agreement also contained the following provision, which because of its importance to the case, is set out in full:

> That in consideration of the terms, conditions and covenants of this agreement, First Parties [respondents] do for themselves, their heirs, executors, administrators and assigns, agree with Second Parties [bankrupt, his wife and Century], their heirs, executors, administrators and successors that neither of First Parties will apply or jointly institute any suit, action at law or equity or proceeding against the Second Parties or any of them, nor in any way institute or prosecute any claim, demand, action or cause of action for such claim, damage, loss, recovery or expense of any nature arising out of the transaction between First Parties and Second Parties hereinabove referred to. No provision herein shall, however, in any manner be construed or intended to limit, affect or impair the right of First Parties to act upon the promissory note agreed to be delivered by the terms of this agreement in the event of a failure of the Second Parties to make the payments as provided for therein, including attorney fees and court costs.

Pursuant to the agreement and note of January 10, 1963, the bankrupt made payments of $500.00 per month from March 1, 1963, through July 1, 1963. Thereafter, bankrupt and his wife defaulted on said promissory note, and on November 15, 1963, the respondents commenced an action in the Superior Court of the State of California, in and for the County of Santa Clara, on said promissory note. The bankrupt answered and raised the affirmative defense that the promissory note included interest at a usurious rate, namely 20%. The parties to the action in the Superior Court thereafter entered into a Stipulation for Judgment whereby it was agreed that the bankrupt, his wife and Century have judgment against them for "the sum of $16,842.41 principal, interest from July 1, 1963, to date at 7% per annum amounting to $717.71, $2,500.00 attorney fees and $34.50 costs." On February 11, 1964, judgment was entered in favor of respondents and against bankrupt, his wife and Century for $20,094.62.

The petitioning bankrupt raises a number of issues in his Petition for Review of the Referee's order holding that the $20,094.62 debt was nondischargeable. However, the question that first must be answered is whether the note given pursuant to the agreement of January 10, 1963, was accepted by respondents only as evidence of a pre-existing debt, or whether it was given by the bankrupt and his wife as consideration for a waiver of the antecedent tort action, namely the conversion by bankrupt of respondents' funds.

■ It is the general rule that if a note is given merely as evidence of a debt, the court may look behind the note to the debt to determine if it was created by "wilful and malicious injury to the * * * property of another" or one of the other excepted causes of Section 17a of the Bankruptcy Act, American Surety Co. v. McKiearnan, 304 Mich. 322, 8 N.W.2d 82, 145 A.L.R. 1235 (1943); Zimmern v. Blount, 238 F. 740 (5th Cir. 1917); 1 Collier, Bankruptcy ¶17.16, at 1626 (14th ed. 1964).

■ But, if it is shown that the note, by express agreement is given and received, as a discharge of the original obligation or tort action, then the execution of the note extinguishes the tort action and it would be error for the court to look behind the note, Maryland Casualty Co. v. Cushing, 171 F.2d 257 (7th Cir. 1948); 1 Collier, op. cit. supra.

**300**

In the instant case the note and agreement of January 10, 1963, contains express language of novation, namely the substitution of the note for the respondents' agreement not to "institute or prosecute any claim, damage, loss, recovery or expense of any nature arising out of the transaction between First Parties [respondents] and Second Parties [bankrupt, his wife and Century] hereinabove referred to." According to the agreement, the remedy of the respondents is restricted to an action upon the promissory note if the bankrupt defaults. Inasmuch as there is no evidence in the record to support any other interpretation the court concludes that the intent of this agreement was not merely to evidence or suspend the debt, but to discharge the antecedent tort action.

The bankrupt and his wife gave valuable consideration in return for respondents' agreement to waive the tort cause of action. The bankrupt made himself personally liable for what was, in form, a debt of the corporation, Century. Whether bankrupt would have been held personally liable for the debt of Century because of his acts, regardless of the agreement, is a question that need not be decided. Further, the signing of the agreement and note by the bankrupt's wife made her separate property and earnings liable for the debt. See Calif.Civ. Code §§ 168 and 171. In addition, the bankrupt's personal undertaking upon the note may constitute a loss to the bankrupt of the defense that Century had paid a usurious rate of interest to respondents. See 3 Collier, Bankruptcy ¶63.07, at 1822–24 (14th ed. 1964). In light of the foregoing the court concludes that the discharge of the antecedent tort claim of respondents was amply supported by consideration from the bankrupt and his wife.

It is the court's conclusion that the rule enunciated by the Seventh Circuit in the *Cushing* case, supra, should be followed here. To allow the respondents to now go behind the note to establish the nondischargeable character of the original indebtedness would destroy the very essence of what the bankrupt bargained for in the agreement of January 10, 1963. It is, therefore, this court's opinion that it was error for the Referee to go behind that agreement, and the note given pursuant thereto.

The decision of the Referee is reversed and it is ordered that the bankrupt's debt to respondents be discharged.