**John J. RELLES, Plaintiff-Respondent,**

v.

**Eugene W. WINES, Defendant-Appellant.**

**No. 32482.**

St. Louis Court of Appeals.
Missouri.

May 16, 1967.

John D. Connaghan, St. Louis, for appellant.

Norman Zaltsman, Clayton, for respondent.

CLEMENS, Commissioner.

By this court-tried action the plaintiff got a $6,900 judgment for money he had loaned the defendant. The defendant contended that the money had not been loaned to him personally, but to a corporation he controlled.

On this appeal the defendant first contends the evidence does not support a personal judgment against him. The decisive factual issue is whether plaintiff loaned

money to the defendant personally or to the corporation. The defendant also raises two legal issues: that plaintiff accepted payment, partly in money and partly by a note from the corporation, and that this constitutes a novation; further, the defense of tender, claiming he offered plaintiff full payment of the corporate note.

We must first weigh the evidence to determine whether the loan was personal or corporate. If we find it was a personal loan, we will then pass upon defendant's further defenses of novation and tender.

The pleadings are simple. Plaintiff's petition, insofar as it pertains to the issues tried, alleged that on January 10, 1961, he loaned the defendant $9,600 for an investment by defendant in the Candeb Corporation, an Illinois corporation; that defendant had paid only $2,500 of the loan; and that the defendant had refused to pay plaintiff the $7,100 balance of the loan, for which amount, with interest, plaintiff prayed judgment. By his answer, defendant admitted "that money was borrowed from the plaintiff for the use of the Candeb Corporation and that the plaintiff was well aware of this fact and knew that this foresaid money would be used for the benefit of the corporation solely and not for the benefit of this defendant, Eugene W. Wines."

The plaintiff's evidence: Plaintiff John J. Relles and defendant Eugene W. Wines were lawyers, both active in practice in St. Louis. Early in 1961 the defendant was promoting the Candeb Corporation, a prospective developer of dormitories at Southern Illinois University. Candeb was seeking a $1,200,000 construction loan. The defendant told plaintiff he had raised $40,000 to invest in the corporation but had to increase his investment by $10,000 to qualify Candeb for the construction loan. At first plaintiff told the defendant no; he could not raise that much money without selling all his securities. Defendant promised that if plaintiff would loan him $10,000 he would (1) give plaintiff his and his wife's six-month, six per cent note, (2) pay plaintiff

an additional amount to cover his brokerage expense and loss of dividends from the sale of plaintiff's stocks, and (3) pledge 20 per cent of Candeb's stock as collateral. Finally the plaintiff was persuaded.

Plaintiff raised $9,600 and gave defendant a check for that sum, payable to defendant personally. The defendant endorsed the check, put $8,000 in Candeb's bank account and kept $1,600 in cash. Time passed. The defendant did not yield to plaintiff's repeated requests for the promised note and collateral, so plaintiff demanded full payment of the loan. On July 6, 1961, the defendant paid plaintiff $2,500. This payment was made by a check signed by defendant but drawn on Candeb's bank account. Later, the defendant twice paid plaintiff $100 in cash. In December, 1961, defendant sent plaintiff a promissory note for $6,700, signed by him as president of Candeb Corporation. Plaintiff kept the corporation's note but protested that the balance due was $7,100, not $6,700, and that he was looking to the defendant and his wife, not Candeb, for payment. Then in April of 1962 the defendant gave plaintiff his personal check for $6,867.50, marked "In full payment of promissory note of Candeb Corporation of Dec. 14, 1961." Plaintiff refused the check, saying "I want every penny you owe me, not a penny less."

Plaintiff introduced two of Candeb's financial statements dated in July of 1961 and March of 1962; neither showed plaintiff as a creditor. At some unspecified time Candeb went through dissolution proceedings. On December 3, 1963, *defendant* sued Candeb for money he claimed to have loaned Candeb, and got a default judgment. In contrast to Candeb's shaky financial condition, the defendant was solvent. His personal financial statement given in 1962, in connection with the proposed construction loan to Candeb, showed a substantial net worth. That was plaintiff's case.

The defendant's evidence: Late in 1960 the defendant and three others organized Candeb Corporation to develop a tract of

land for college dormitories. Defendant needed more money to invest in Candeb and asked plaintiff to loan the corporation $10,-000. Defendant promised that plaintiff would get his money back with six per cent interest, plus a bonus of $2,500, when Candeb negotiated a million-dollar-plus loan. Defendant received plaintiff's $9,600 check, payable to the defendant personally. Plaintiff told defendant he did not need the corporation's note, that the canceled check would be a sufficient receipt. Defendant endorsed the check; he put $8,000 in Candeb's bank account and gave $1,600 in cash to other incorporators to pay organization expenses.

Defendant said that in July of 1961 plaintiff told him he wanted some of his money back, so defendant gave him a $2,500 check drawn on Candeb's bank account. Defendant admitted he made the two $100 cash payments to plaintiff—and said he had actually paid him $750 in cash. Receipts were neither requested nor given. Defendant explained that since there was no money available in Candeb's bank account at the time, he advanced the money personally, expecting Candeb to refund it when its construction loan went through. On December 14, 1961, ten months after plaintiff's loan, the defendant mailed Candeb's $6,700 promissory note to plaintiff. Defendant said that was the amount then due. The note carried neither a due date nor provision for interest. Four months later defendant tried to pay off this note by offering plaintiff his personal check for $6,867.50, but plaintiff refused it. Defendant explained that the check was on his personal account because Candeb still did not have the money; that he expected to get it back from Candeb when the construction loan was completed.

The defendant offered in evidence plaintiff's letter of April 23, 1962, to Mr. Gerald A. Weiss, a realtor who was trying to negotiate Candeb's construction loan. In this letter plaintiff said his claims against defendant and Candeb "have been amicably resolved." Plaintiff had told Mr. Weiss earlier that he, plaintiff, had a pledge of 20 per cent of Candeb's stock. On cross-examination plaintiff explained the statement about claiming he had a stock interest in Candeb. He said he had learned that Candeb's loan would not be made without the consent of all its stockholders. He testified: "I was going to put the kabash (sic) on their getting a loan from the Teamsters if I didn't get my money." Plaintiff did not explain the letter wherein he told Mr. Weiss that his claims against the defendant and Candeb had been resolved.

That was the pertinent evidence. As said, the decisive question is whether the evidence justifies a finding that plaintiff loaned money to the defendant personally, rather than to the corporation.

The plaintiff and the defendant flatly contradicted each other about who borrowed the $9,600, defendant or Candeb. Plaintiff is impeached by his statement to Mr. Weiss that he, plaintiff, had a pledge of 20 per cent of Candeb's stock when in fact he did not. He is further impeached by his letter to Mr. Weiss saying his claims against Candeb and the defendant "have been amicably resolved." The statement and the letter were admittedly false. However, these inconsistencies in plaintiff's evidence are outweighed by other facts that are even more inconsistent with the defendant's contention that the loan was made to Candeb: The plaintiff's $9,600 check was payable to the defendant personally, not to Candeb. The defendant admittedly held out $1,600 of the loan, without showing any record that it went for corporate purposes. Defendant personally paid plaintiff either $200 or $750 in cash without any record showing it was paid for the corporation. The corporate note was not issued until ten months after the loan was made. Over a year after the loan was made the defendant tried to pay the note with his personal check. Candeb's two financial statements did not show any indebtedness to plaintiff. The defendant's personal solvency and the corporation's insolvency gave the defendant

**22**

a motive for trying to shift the obligation from himself to the corporation.

 We have weighed the evidence, as is our duty under Civil Rule 73.01(d), V.A.M.R., in a court-tried case. We have heeded that rule's directions that "[t]he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We resolve this factual issue as the trial court did, in favor of the plaintiff. We pass on to the defenses of novation and tender.

 In his motion for new trial and in his brief the defendant argues that the plaintiff by retaining Candeb's $6,700 note thereby released the defendant as the original debtor and accepted Candeb as his creditor. This defense of novation must fail, for several reasons. It was an affirmative defense of release but was not pleaded as required by Civil Rule 55.10, V.A.M.R. Morriss v. Finkelstein, Mo.App., 145 S.W.2d 439 [6]. Nor was there clear and convincing evidence of plaintiff's release of defendant as his original debtor and his acceptance of Candeb as his new creditor, all that being required for a novation. Negbauer v. Fogel Construction Co., Mo.App., 53 S.W.2d 346 [8, 9]. If further reason be needed for denying the defense of novation, we point to its utter inconsistency. This, because defendant contended that from the inception of the loan it was Candeb, not he, who promised to pay the plaintiff.

 The defendant's last contention is that by his offering plaintiff the $6,867.50 check on April 18, 1961, he has established a defense of tender, thereby stemming the accrual of interest under Civil Rule 77.23, V.A.M.R. That defense, even if valid, was neither pleaded nor preserved in defendant's after-trial motion. It is not preserved for review. Hart v. John W. Rowan Plastering Co., Mo.App., 88 S.W.2d 264 [2, 3]; Civil Rule 79.03, V.A.M.R.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

RUDDY, Acting P. J., WOLFE, J., and THEODORE McMILLIAN, Special Judge, concur.