**GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff-Respondent,**

v.

**Louis R. KLEIN, Defendant-Appellant.**

No. 35431.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 23, 1974.

Busch, Baine & McEnery, Robert G. Schwendinger, Clayton, for defendant-appellant.

Wuestling & James, William F. James, St. Louis, for plaintiff-respondent.

KELLY, Judge.

This is an appeal from a judgment in favor of the respondent, General Insurance Company of America, hereinafter the plaintiff, in the sum of $28,367.27, which appellant, Louis R. Klein, hereinafter the defendant, admittedly misappropriated from his former employer, General Mercantile and Hardware Company, hereinafter Mercantile. The single issue for determination is whether an agreement entered into between the defendant and the plaintiff constituted a contract dischargeable in bankruptcy. We hold that it did not and affirm the judgment of the trial court.

The facts are quite simple. Defendant admitted that he had misappropriated and converted to his own use $28,367.27, the property of Mercantile while he was employed as general manager by that firm. The loss to Mercantile was covered by a fidelity insurance policy issued on behalf of Mercantile insuring it against defalcations on the part of its employees and pursuant to the terms of said policy of insurance the plaintiff paid the loss and was subrogated to Mercantile's rights against the defendant. Having paid the loss shortly after it was discovered on January 16, 1967, the plaintiff, as subrogee of Mercantile, entered into the following agreement with the defendant on November 7, 1968:

"Whereas, Klein was formerly employed by Mercantile and during such employment at various times wrongfully converted to his own use funds of Mercantile in the total amount of Twenty-eight Thousand, Three Hundred Sixty-seven Dollars and Twenty-seven Cents ($28,367.27), and,

Whereas, Mercantile was insured against such loss by Safeco [1] and Safeco has paid the above sum to Mercantile and Mercantile has assigned to Safeco its cause of action against Klein relating to same, and,

Whereas, Klein desires to make restitution for the amounts he misappropriated,

Now, Therefore, in consideration of the premises, the mutual covenants herein and other good and valuable consideration, receipt of which is hereby acknowledged by all parties, the parties agree as follows:

1. Klein shall pay the sum of Twenty-eight Thousand and Three Hundred Sixty-seven Dollars and Twenty-seven cents ($28,367.27) to Safeco in monthly installments of Two Hundred Dollars ($200.00), the first such installment being due on the 1st day of March, 1969, and the remaining installments on the 1st day of each month thereafter. In the event of default in any installment, then Safeco shall have the option of declaring the entire indebtedness due.

2. Klein acknowledges that his taking of said money from Mercantile was wrongful and fraudulent and of such nature that his obligation to repay same, and his obligation to pay under this agreement, cannot be discharged in bankruptcy.

3. Safeco and Mercantile, and each of them, hereby release, acquit and forever discharge Klein from any and all claims, demands and causes of action of whatever kind, they or either of them may have against Klein, except that created by this agreement."

Thereafter, on May 1, 1970, the defendant was granted a discharge in bankruptcy by the United States District Court for the Eastern District of Missouri. Among the unsecured creditors duly scheduled was plaintiff in the amount of $28,367.27. Defendant never, at any time, made any payments to the plaintiff in accordance with the terms of the Agreement.

On March 9, 1971, plaintiff filed this suit in two counts: Count I, on the Agreement and Count II as subrogee of Mercantile under the terms of its fidelity policy of insurance for the money wrongfully converted by defendant to his own use. After a trial of the cause to the court without a jury, the trial court entered judgment on Count I of plaintiff's petition in favor of plaintiff and found for defendant on Count II of the petition. This appeal followed.

In this appeal from a court tried judgment we review both the law and the evidence as in suits of an equitable nature, the judgment is not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's opportunity to

1. Safeco is another name used by plaintiff in the conduct of its insurance business.

judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R.

Defendant contends that by execution of the Agreement his only obligation thenceforth was to comply with the terms of the Agreement; that plaintiff had waived any rights it might have in a tort action for conversion since the Agreement constituted a novation; that the nondischargeability clause contained therein is invalid, and, like any other contractual obligation, his liability under the Agreement was properly discharged in bankruptcy.

■ It is indisputable that in the absence of the written Agreement upon which Count I of plaintiff's petition is founded, defendant's obligation to make restitution of the funds wrongfully converted from his employer would have been nondischargeable in proceedings under Section 17, 11 U.S.C.A. § 35 sub-paragraph (a)(4) which provides that debts created by fraud, embezzlement, or misappropriation while acting as an officer or in any fiduciary capacity are nondischargeable. "Fiduciary capacity," as that term is used in the Bankruptcy Act has been defined to include the trust or confidence which arises whenever the property of one person is put in charge of another. Hamby v. St. Paul Mercury Indemnity Co., 217 F.2d 78, 80[2] (4th Cir. 1954). An employee acts in a fiduciary capacity which makes a debt created by his fraud, embezzlement or misappropriation nondischargeable if it occurs while he occupies a position of trust. Airo Supply Co. v. Page, 2 Ill.App.2d 264, 119 N.E.2d 400, 404[3] (1954). Defendant's position as general manager for Mercantile was a position of trust in which he breached his fiduciary duty to Mercantile when he misappropriated funds of Mercantile and therefore the debt created thereby is nondischargeable in a bankruptcy proceeding.

It is clear, as defendant contends, that the provision in the Agreement contained in paragraph two thereof relative to the nondischargeability of defendant's obligation to pay the money taken from Mercantile is invalid because such an agreement would defeat the purpose of the Act. 11 U.S.C.A. § 35(a)(2); Fallick v. Kehr, 369 F.2d 899 (2nd Cir. 1966). Nevertheless the provision may shed some light on the intention of the parties at the time the agreement was executed and its legal consequences, as we shall more fully explore hereinafter.

■ The critical question presented in this case is whether by the execution of the Agreement a novation resulted whereby defendant was released of his tort liability. In resolving this issue we note that there are two opposite, but relevant, rules of law applicable to the situation here presented. The first rule holds that where a note is given or an agreement is made merely as evidence of a debt the court may look behind the note or agreement to the debt to determine whether it was created by willful and malicious injury to the property of another or if it was for one of the other excepted causes in Section 17(a) of the Bankruptcy Act. United States Credit Bureau v. Manning, 147 Cal.App.2d 558, 305 P.2d 970, 972[1] (1957); Levin v. Singer, 227 Md. 47, 175 A.2d 423, 429[4, 5] (Md.App.1961); American Surety Co. v. McKiearnan, 304 Mich. 322, 8 N.W.2d 82, 84[4] (1943). If the court finds that the instrument is based on an obligation not dischargable in bankruptcy, then the fact of reduction to writing will not alter its dischargeability. The second holds that if, by express agreement, the note or agreement is given and received as a discharge of the original debt or tort action, then the execution of the note or agreement extinguishes the prior debt or the tort liability and the court may not look behind the note or agreement to determine its dischargeability in bankruptcy. In re Kelley, 259 F. Supp. 297, 299[1, 2] (N.D.Cal.1965); Maryland Casualty Co. v. Cushing, 171 F.2d 257, 258[3] (7th Cir. 1948).

■ Whether this Agreement was entered into in consideration of plaintiff's

waiver of defendant's tort liability is a question of fact. Maryland Casualty Co. v. Cushing, *supra*, l.c. 259[5]. If it was, then a novation could have resulted. The essential elements of a novation are: 1) a previous valid obligation; 2) the agreement of all of the parties to the new contract; 3) the extinguishment of the old contract; and 4) the validity of the new one. United States Gypsum Co. v. Snyder-Ashe Co., 139 Cal.App. 731, 34 P.2d 767, 768[2] (1934). The controlling element in determining whether a novation has been accomplished is the intent of the parties. A novation is never presumed. W. Crawford Smith, Inc. v. Watkins, 425 S.W.2d 276, 279[7, 8] (Mo.App.1968). Clear and convincing evidence is required to establish a novation, Relles v. Wines, 416 S.W.2d 19, 22 (Mo.App.1967), and the burden of proof rests upon the one who asserts that there has been a novation. W. Crawford Smith, Inc., v. Watkins, *supra*. The critical question for our determination is whether the written instrument under consideration was executed merely as evidence of the tort obligation of the defendant or in settlement, discharge, payment or waiver thereof. Where the instrument is a note and there is no accompanying explanation of its purpose, the underlying facts will be permitted to counter the defense of dischargeability. American Surety Co. v. McKiearnan, *supra*. See also: Levin v. Singer, *supra*, and United States Credit Bureau v. Manning, *supra*, where the notes were considered merely evidence of the original tort liability.

■■■ The normal inference is that a creditor will not intentionally relinquish a nondischargeable claim for one which is dischargeable. That there was a very real possibility that the defendant would seek the benefit of the bankruptcy laws was present in the corporate mind at the time this Agreement was entered into between the parties is evidenced by the phraseology of paragraph 2 thereof wherein the defendant acknowledges that his malfeasance was "wrongful and fraudulent" and of

such nature that it was nondischargeable in bankruptcy. Although this acknowledgment is invalid as a restriction on the right of an honest debtor to the benefits of the bankruptcy laws, we conclude that it might, with other facts, shed some light on the intent of the parties with respect to whether a novation was intended in the execution of the Agreement by the parties, when, as here, we are scrutinizing an Agreement in which one of the parties is an admitted miscreant.

Unlike the American Surety Co., Levin and United States Credit Bureau cases supra, we have here an instrument which contains more than an unexplained note. The Agreement here contains several paragraphs of recital of facts and what is essentially a note; however, it also contains similarities to the agreement in In re Kelley, *supra*, where it was held that the agreement constituted more than mere evidence of an underlying obligation and created a new and distinct obligation which could be discharged in bankruptcy even though the underlying obligation was nondischargeable. In Kelley the court, 259 F. Supp., l.c. 300[3], emphasized that the note and agreement contained express language of novation, viz. the substitution of the note was for the respondents' agreement not to "institute or prosecute any claim, damage, loss, recovery or expense of any nature arising out of the transaction . . ." and held that *in the absence of any evidence in the record* to support any other interpretation the court concluded that the intent of the agreement was not merely to evidence or suspend the debt, but to discharge the antecedent tort action. Language similar to that found in Kelley is present in this case in paragraph 4 of the Agreement. Nevertheless, we conclude that Kelley can be distinguished from the present case. Here there is a recitation in the Agreement itself that it is based on liability for the "wrongful and fraudulent" act of the defendant in taking money from Mercantile which defendant specifically recognized as being nondischargeable in

bankruptcy. There is no such language in Kelley. Also in Kelley the agreement and note in support thereof included two new parties into the transaction, at least one of whom—the wife—would not have been liable under the original obligation, and the defendant debtor relinquished a possible defense he had to payment of the original obligation. The importance of these facts are that they support a clear intent to create a new obligation and waive or discharge the old with resulting benefits to both parties to the agreement. We conclude that Kelley is not controlling here.

■ The evidence is undisputed that the defendant has made no payments in accordance with the terms of the Agreement. The general rule is that the performance of, or promise to perform, an existing legal obligation is not a valid consideration, except where the very existence of the duty is the subject of an honest and reasonable dispute. 17 C.J.S. Contracts § 110 (1955). When the defendant signed the Agreement there was no longer a reasonable dispute of either the fact of his defalcation or the amount thereof since the defendant, almost two years prior thereto, had signed a written statement admitting that he was liable to Mercantile for the same amount set out in the Agreement. Plaintiff, as subrogee of the rights of Mercantile, in reliance on this prior statement acquired Mercantile's rights to restitution from defendant and in signing the Agreement with plaintiff defendant was relinquishing nothing because he was already obligated to pay the monies to the subrogor, Mercantile.

As we view the Agreement it was merely written evidence of a debt owed plaintiff's subrogor and the court may therefore look behind the four corners of the document, if necessary, to determine the intent of the parties and whether the underlying debt was dischargeable in bankruptcy.

■ The policy of the Bankruptcy Act is to relieve an insolvent debtor from those debts and obligations *honestly* contracted and incurred, which he is unable to meet because of some misfortune. It is not the policy of the Act nor the intent of Congress that a bankrupt be released from an obligation which is the necessary result of acts of dishonesty specifically excepted in Section 17 of the Act. In those instances it is the policy of the Act and the intent of Congress that the bankrupt not be the beneficiary of the provisions of the Act which would afford him relief from the consequences of his own wrongful deeds. Koch v. Segler, 331 S.W.2d 126, 131[5] (Mo. App.1960).

■ We conclude that while there is some evidence in the Agreement itself which would support a finding that the parties intended a novation, there is also evidence to the contrary. Paragraph 4 of the Agreement would lend support to the view that novation was intended. However, the three introductory "Whereas" paragraphs clearly indicate the wrongful conversion of the monies of Mercantile by the defendant, the basis for plaintiff's subrogation rights, the defendant's desire to make restitution, and later, in paragraph 2, his acknowledgment that his obligation should not be discharged by bankruptcy. The ambiguity of the Agreement is apparent. However, since the burden of proving novation rests upon the defendant, we conclude that the trial court was not clearly erroneous in entering judgment for the plaintiff and we construe the Agreement to be nothing more than a method used by the parties to settle upon an amount wrongfully converted by the defendant and payment therefor, i. e., evidence of the debt.

We affirm.

DOWD, C. J., and SIMEONE, J., concur.