**In re Gail L. RUSSIE and Sylvia T. Russie, Debtors.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Plaintiff,**

**v.**

**Gail L. RUSSIE, Defendant.**

**Bankruptcy No. 80 B 6859.**
**Adv. No. 80 A 1406.**

United States Bankruptcy Court,
N. D. Illinois, E. D.

May 5, 1981.

Richard D. Larson, DeKalb, Ill., for defendant.

Teresa Banas, Tyler, Peskind, Solomon & Hughes, P.A., Aurora, Ill., for plaintiff.

MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on the complaint of United States Fidelity and Guaranty Company (USF&G) to determine the dischargeability of debtor's debt to USF&G. Having considered the briefs and memoranda filed and being fully advised in the premises, the court hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor was the president, chief executive officer and treasurer of Russie Floor Maintenance and Supply, Inc., an Illinois Corporation. Debtor was also a director and shareholder of the corporation. Further, debtor had knowledge of, and was in control of, the corporation's bank accounts.

In 1977 debtor began a "check kiting" scheme whereby he fraudulently converted $33,470 from the Farmers and Merchants Bank of Sycamore, Illinois (Farmers Bank). The corporation had bank accounts at the Farmers Bank, at the DeKalb Bank, at the First National Bank of Malta (First National) and at the First Security Bank of Glendale Heights (First Security).

First the debtor drew a check of about $17,000 on the First National account, which check he deposited into the Farmers Bank account. Then two days later he withdrew six cashier's checks totalling about $17,000 from the Farmers Bank account. When Farmers Bank tried to collect funds from the check drawn on First National, the check was returned marked "Not Sufficient Funds."

The next day the debtor deposited four checks totalling about $35,000 into the Farmers Bank account. These checks were drawn on the DeKalb Bank account. Later that same day he withdrew three cashiers checks totalling approximately $17,500 from the Farmers Bank account. When Farmers Bank tried to collect funds from the checks drawn on the DeKalb Bank account, the checks were returned marked "Account Closed." A few days later debtor deposited a $35,000 check drawn on the First Security account into the Farmers Bank account. When Farmers Bank tried to collect on that check, it was also returned marked "Account Closed." Thus, debtor defrauded Farmers Bank out of $33,470 pursuant to the check kiting scheme by overdrawing the corporation's account in that amount.

Farmers Bank was insured against loss caused by fraud through USF&G. USF&G indemnified Farmers Bank for its $33,470 loss. Farmers Bank subsequently assigned to USF&G any and all causes of action the Bank had against debtor. On April 4, 1978 debtor signed a promissory note payable to USF&G for $33,470. The note stated that:

This note *is given as evidence of a debt of the maker* of this note in favor of creditor and *not as a new consideration. Said debt results from a claim or rights of said creditor against the maker* of this note. Said creditor has been paid . . . said debt by USF&G. . . . By payment of said debt, USF&G has or will *become subrogated to the claim* or rights of *said creditor against the maker* of said note (emphasis supplied).

USF&G's claim now totals $33,220.

USF&G contends their claim is nondischargeable. Debtor's answer raises the promissory note as an affirmative defense. Debtor stipulates to the underlying facts and states that but for the promissory note the debt would be nondischargeable. Debtor contends that the note substitutes a new dischargeable debt for the original nondischargeable debt. USF&G contends that a note given merely as *evidence of* an underlying nondischargeable debt retains its nondischargeable character. Debtor contends that the note was given in *satisfaction of* the underlying nondischargeable debt. Debtor contends that the dischargeability *vel non* of the debt should be determined from the face of the note or from the record of USF&G's judgment on the note in state court.

## ISSUE

Was the note given as evidence of or in satisfaction of the underlying nondischargeable debt?

834

## DISCUSSION

■ The court has found no cases decided under the Bankruptcy Reform Act of 1978 directly on point with the instant case. The court therefore reviewed cases decided under the Bankruptcy Act of 1898 for guidance. Under the old Act, the general rule was that when a note was given merely as evidence of a debt, the court might look behind the note to the underlying debt in determining the dischargeability *vel non* of the note. *In re Kelley*, 259 F.Supp. 297 (N.D.Ca.1965). This court holds that the general rule still applies to cases decided under the New Code.

■ Debtor contends that giving the note as satisfaction of the underlying debt creates a dischargeable debt. However, the terms of the note, quoted above, clearly state that "the note is given as evidence of a debt" of the debtor, and "not as a new consideration." Moreover, on USF&G's Request for Admission # 55, the debtor expressly admits that "On April 4, 1978, Gail L. Russie executed and delivered ... a promissory note ... *evidencing* Gail L. Russie's obligation to ..." USF&G (emphasis supplied). Based on the note's terms and the response to the Request for Admission, this court holds that the purpose of the promissory note in the amount of $33,470 was to evidence the underlying nondischargeable debt and therefore is also nondischargeable.

Debtor contends the note creates a new dischargeable obligation between him and USF&G. To support his contention he argues, among other things, that the underlying nondischargeable debt was a corporate obligation and that the fraud was perpetrated by him in his corporate capacity. Since he signed the note in his individual capacity he contends the note was not *evidence* of the corporate debt, but in fact satisfied the corporate debt by substituting an individual obligation for the corporate obligation.

■ It is hornbook law that corporate officers and directors who knowingly and actively participate in fraudulent acts are personally liable to the defrauded party notwithstanding that the fraudulent acts were committed in a corporate capacity. 13 *Illinois Law and Practice* § 353; *Citizens Savings and Loan Assoc. v. Fischer*, 67 Ill. App.2d 315, 214 N.E.2d 612 (1966). The court holds that debtor is personally liable for fraudulent acts committed by him in his corporate capacity. Moreover, debtor's contention that the underlying obligation was a corporate debt finds no support in the record. Debtor deposited worthless checks from corporate accounts into a savings account of Farmers Bank. The evidence does not show whether the savings account was an individual or corporate account. Of the nine cashiers checks subsequently withdrawn, six were remitted by Gail L. Russie individually while only three were remitted by the corporation. Debtor's check kiting arrangement manifestly benefitted him directly in his individual capacity. *See also National Bank of Commerce v. Hughes-Walsh Co.*, 246 So.2d 872 (La.App.1971) where the court held the corporate president personally liable for a bank's losses caused by the president's active participation in a check kiting scheme. *See also* 47 A.L.R.3d 1250 for annotated cases concerning personal liability regarding corporate checks.

■ Debtor contends that USF&G obtained a judgment upon the note in state court. This contention finds no support in the record but assuming, *arguendo*, that USF&G did receive a judgment on the note upon a contract action, USF&G is not barred from the present action by the election of remedies doctrine. Debtor cites *Household Finance Corp. v. Suhr*, 193 N.E.2d 611 (1963) in support of his argument. *Suhr* only holds that a plaintiff can sue in either contract or tort and a judgment based on one cause of action does not bar a suit based on the other cause of action until one of the judgments is satisfied. Assuming USF&G received a state court judgment based upon a contract cause of action, this court can consider evidence extrinsic to that judgment in determining the dischargeability of the debt. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767

(1979). USF&G's judgment on the note does not change the fact that the underlying debt is nondischargeable and the note evidencing said debt is likewise nondischargeable.

Another case cited by debtor is *In re Kelley, supra,* 259 F.Supp. 297 (N.D.Ca. 1965). In *Kelley* the court did hold that the making of a note substituted a dischargeable debt for the underlying nondischargeable debt. *Kelley,* however, is easily distinguished from the case at bar. The note given in *Kelley* was signed by the debtor, *his wife,* and the *corporation.* The district court examined the language of the note and the agreement and found that the note was given as consideration for a waiver of the antecedent tort claim. Thus, *Kelley* reaffirms the general rule that when a debtor defrauds a creditor and then gives that creditor a note in the amount of the funds obtained, the court can look at the terms of the note and other extrinsic evidence to determine whether the note was given in satisfaction of the underlying debt or merely as evidence of the underlying debt. A note given as evidence of an underlying nondischargeable debt retains its nondischargeable character. See 8B C.J.S. § 573a; *In re Wright,* 584 F.2d 83 (5th Cir. 1978); *Matter of Pigge,* 539 F.2d 369 (4th Cir. 1976).

WHEREFORE, IT IS HEREBY ORDERED that the claim of United States Fidelity and Guaranty Company for $33,220 as evidenced by the April 4, 1978 promissory note executed by debtor be and hereby is determined to be a nondischargeable debt pursuant to the parties' stipulation that the underlying debt evidenced by said note is a nondischargeable debt according to the Bankruptcy Reform Act of 1978.