## MARTIN v. BRECKENRIDGE.

### In re GROVE.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2438.

1. Accord and satisfaction ⊝19—Bankruptcy ⊝309—Novation ⊝5.

Execution of individual renewal note in name of partnership *held* not novation of original indebtedness or accord and satisfaction, barring recovery against bankrupt estate of individual as well as partnership, in view of circumstances and understanding that individual was liable thereon.

2. Novation ⊝1.

A "novation" is mutual agreement for discharge of existing obligations by substitution of new obligation or like agreement for discharge of debtor to his creditor by substitution of new creditor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

3. Accord and satisfaction ⊝19.

An "accord and satisfaction" is not new promise itself, but performance of new promise that is accepted as satisfaction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Martinsburg; William E. Baker, Judge.

In the matter of the bankruptcy of C. G. Grove and Roy C. Grove, individually and as partners trading as C. G. Grove & Son. The claim of Martha L. Breckenridge was disallowed by the referee as against C. G. Grove individually, and, from a decree of the District Court (7 F.[2d] 228) reversing the ruling of the referee, the trustee, Clarence E. Martin, appeals. Affirmed.

J. O. Henson, of Martinsburg, W. Va., for appellant.

Isaac Wingert, of Chambersburg, Pa., for appellee.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the Northern District of West Virginia, rendered on the 17th of August, 1925, in the voluntary bankruptcy proceeding pending in said court, of C. G. Grove and Roy C. Grove, partners

trading as C. G. Grove & Son, and as individuals. The appeal presents the question of whether appellee, Martha L. Breckenridge, is entitled to share as an individual creditor of the bankrupt, C. G. Grove, as well as a creditor of the firm of which he was a member. The trial court, reversing the referee, held that appellee was entitled to participate in the distribution of the assets of the firm as well as of C. G. Grove as an individual. This holding of the District Court is the only subject for review on this appeal. The facts may be briefly stated as follows:

Martha L. Breckenridge, the appellee, is the widow of J. H. Breckenridge, deceased, and a resident of Fayetteville, Pa. Breckenridge was a farmer who dealt extensively in live stock, principally horses and mules. C. G. Grove, one of the bankrupts in this case, and the senior member of the firm, was also a live stock dealer many years, residing near Martinsburg, W. Va. Breckenridge and C. G. Grove had business dealings with each other of considerable magnitude, covering many years. Breckenridge frequently advanced money to Grove for the purchase of stock, and he frequently bought stock for Breckenridge. Balances having accumulated in the hands of Grove, he was permitted to retain these sums as individual loans, giving his notes therefor. At one time Grove owed Breckenridge as much as $8,000, arising partly from balances due and partly from straight loans. During the period of these transactions, C. G. Grove and Roy C. Grove, his son, formed the partnership of C. G. Grove & Son, in bankruptcy herein. No dealings, either direct or indirect, were had between Breckenridge and the firm of C. G. Grove & Son, the transactions all being with C. G. Grove individually. On or about April 1, 1920, C. G. Grove owed Breckenridge $7,000, represented by notes. About this time Breckenridge was taken ill with a malady from which he died several years later. Apprehensive because of the seriousness of his condition, Breckenridge requested C. G. Grove to come to his residence in Pennsylvania with a view of adjusting the indebtedness due him. This Grove did, and, finding himself unable to meet the claim at the time, he asked for an extension of payment of the amount due by him, giving renewal notes for the same, over a period of several years, which was agreed to, and the new notes were made payable to the wife of J. H. Breckenridge to whom her husband was considerably indebted for money loaned him. The original notes were those of C.

G. Grove individually, and the indebtedness was solely his. The renewal notes, four in number, covering the obligation herein involved, were all made payable to Martha L. Breckenridge, at the People's Trust Company of Martinsburg, W. Va., three of them bearing date of April 1, 1920, as follows: One payable at two years for $1,500, with interest; one at three years for $2,000, with interest; one at four years for $2,000, with interest; and the fourth was dated September 1, 1920, for $1,500, payable at seven months, with interest, upon which a credit of $500 was paid. The first three notes were signed by C. G. Grove & Son and Anna S. Grove, and the last-named by C. G. Grove & Son. The notes were signed by C. G. Grove & Son, instead of by C. G. Grove individually; both Breckenridge and Grove believing that the notes so signed, given in lieu of the ones originally signed by C. G. Grove individually, would cover all of the assets, as well of said C. G. Grove & Son as of the individual partners, C. G. Grove and Roy C. Grove, and which would become an additional security for the debt due Breckenridge. The notes originally given by C. G. Grove were not paid, but were delivered by Breckenridge to him upon receipt of the new notes made payable to Martha L. Breckenridge. Subsequent to the delivery of the new notes, to wit, on April 1, 1922, in the lifetime of the said J. H. Breckenridge, the said C. G. Grove executed and delivered the following paper, filed as Exhibit J, with the petitioner's claim (Record, page 27):

"April 1, 1922.

"This writing is to show that I will see that Mr. J. H. Breckenridge, who holds notes against me for certain sums of money that in the event of anything happening me that I will secure him on real estate.

"[Signed] C. G. Grove."

After the death of said J. H. Breckenridge, his widow, Martha L. Breckenridge, the owner and holder of the said notes, learning of the bankruptcy proceeding herein, employed counsel to represent her in the collection of the debt. Hearing of the referee's ruling that she would be allowed to participate in the firm assets only, which were of small value, and not in the individual assets of C. G. Grove, she promptly filed her petition, requesting that the referee reopen and rehear the claim, and setting forth the real status of the same against C. G. Grove individually, which was not apparent in the original proof of debt.

The following matters, which are of vital

importance in the consideration of this case, are apparent to the court from the testimony: First. That there can be no serious doubt that the original indebtedness was the individual liability of C. G. Grove. Second. That, in granting the extension and taking the new notes, for the liability for the indebtedness primarily, it was not intended, nor was it in the thought of any one, that Breckenridge was to be placed in a less favorable position than that occupied·by him at the time. Nothing is clearer than that the intent, purpose, and desire was to satisfy Breckenridge as to the payment of the notes due Mrs. Breckenridge, which were to be an investment for her after the death of her husband, who was at the time seriously ill. Third. That, whatever question there may be as to the meaning and legal effect of Exhibit J, it indisputably recognized the existence of the liability as that of the individual copartner, C. G. Grove, that the notes given therefor were for his individual debt, and that he would secure the same on real estate 'if anything happened.

[1] With the' facts thus settled, the sole question to be determined is the legal effect of what was done, and whether in the exchange of the notes the holder of the debt lost the right to look to the original debtor for its payment, or was limited in the enforcement thereof solely to the insolvent copartnership.

[2, 3] In the light of the conclusions thus arrived at by the court as to the facts in the case, and just what was the understanding between those participating in the transaction, there was clearly neither a novation of the original indebtedness, nor an accord and satisfaction thereof.

"A novation, under the rules of the civil law, whence the term has b'een introduced into the modern nomenclature of our common-law jurisprudence, was a mode of extinguishing one obligation by another. It was at first used in the common law only to describe a transaction whereby a debtor is discharged from his liability to his original creditor by contracting a new obligation in favor of a new creditor by the order of the original creditor. * * * A novation, then, as understood in modern law, is a mutual agreement, between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on ·the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution 'of a new creditor. * * *" 20 R. C. L. § 1, pp. 359, 360.

"While the distinction between novation and other methods of discharging liabilities is nòt always clear, yet it may generally be discovered by careful attention to the elements of the definition. Accordingly, accord and satisfaction is distinguished from novation, in that novation is a mode of extinguishing one obligation by another; that is, the acceptance of a new promise or a new debtor in satisfaction of a previously existing claim, while in the case of an accord and satisfaction it is not the new promise itself but the performance of the new promise that is accepted as a satisfaction. * * *" 20 R. C. L. § 2, p. 361.

"In order to effect a novation, there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case then is, Did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances. The existence of such an intention may, of course, be found, although there is nothing positive in the agreement." 20 R. C. L. § 8, pp. 366, 367.

The Supreme Court of Pennsylvania, in McCartney v. Kipp, McLain's Appeal, 171 Pa. 644, 648, 33 A. 233, 235, said:

" * * * Novation is not to be presumed. It must be established by evidence. The burden, too, is upon the exceptant to establish what he alleges in this regard. In the absence of proof of a special agreement the mere acceptance of the security · of a third person is deemed a conditional payment, or the receipt of collateral security. Hunter v. Moul, 98 Pa. 13 [42 Am. Rep. 610]; League v. Waring, 85 Pa. 244. The acceptance of a new security for an existing debt does not operate as a payment unless so intended by the parties. Appeal of Kremmerer, 102 Pa. 558. To the same effect is Weakly v. Bell et al., · 9 Watts [Pa.] 280 [36 Am. Dec. 116], in which case the authorities are reviewed."

And at page 649 (33 A. 235) of the same opinion:

" * * * But it does not follow that the acceptance of the new paper was an extinguishment of the old· debt. The authorities already cited hold the very reverse. New

paper of the debtor and paper of third persons accepted for a pre-existing debt, in the absence of a special agreement, are regarded simply as conditional payment or collateral security. There can be no novation unless it was the intention of the parties to substitute the new security for the old and thereby extinguish the old debt."

In Hess v. Dille, 23 W. Va. 90, 96, 97, the Supreme Court of Appeals of that state, considering the question of novation of a debt, said:

"The doctrine is well settled, both in Virginia and this state, that the giving of a new note for a previous one which had become due will not be regarded as an absolute extinguishment or payment of the precedent note or pre-existing debt, *unless it be so expressly agreed,* whether the new note was that of one previously bound or of a stranger. Dunlap v. Shanklin, 10 W. Va. 662; Feamster v. Withrow, 12 W. Va. 611; Bantz v. Basnett, 12 W. Va. 772; Bank v. Good, 21 W. Va. 455, 465, and cases there cited. Nor will the surrender of the old note, of itself, raise a presumption of an agreement to extinguish the debt by the giving of the new note; and especially will no such presumption arise where the creditor would thereby lose some security which he held when he took the new note. Bank v. Good, supra; 2 Dan. on Neg. Inst. §§ 1266, 1267."

In State Bank v. Domestic, etc., Co., 99 Va. 411, 418, 39 S. E. 141, 143 (86 Am. St. Rep. 891), the Supreme Court of Appeals of Virginia, in treating the same subject, said:

" * * * Whether a new security shall be taken to be a novation, or substitution for, and an extinguishment of, a prior indebtedness, is a matter of intention; and the burden rests upon him who asserts that there has been such novation to establish it. The rule is stated thus by this court, in a recent case of the Fidelity Loan & Trust Co. v. Engleby, ante [99 Va.] p. 168 [37 S. E. 957]: 'Whether or not a debt has been novated is a question of fact, and depends entirely upon the intention of the parties to the particular transaction claimed to be a° novation. In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness. The fact that the word "Paid" was stamped on evidences of debt surrendered to the debtor is not, standing alone, a controlling circumstance to show satisfaction.' It is ap-

parent that neither the receiver nor the bank in this instance, intended a novation, for, after delivery of the receiver's certificates, the parties continued to act on the basis of the original agreement, using the receiver's certificates merely for the purpose of evidencing the true amount due from the receiver to the bank."

The federal decisions are in accord with the authorities given above.

The Circuit Court of Appeals of the Eighth Circuit, in the case of A. Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co., 173 F. 855, 97 C. C. A. 465, 35 L. R. A. (N. S.) 1, in which Judges Sanborn, Van Devanter (later Justice Van Devanter) and Munger, sat, in an able and comprehensive opinion by Judge Sanborn, Senior Circuit Judge of that Circuit, fully reviewed and considered the entire subject. To this decision, and the authorities there cited, special reference is made, as containing an interesting and instructive review of the law controlling the present case.

The decree of the District Court will be affirmed, with costs to the appellee.

Affirmed.