**W. CRAWFORD SMITH, INC., d/b/a Smith Funeral Home, Plaintiff-Respondent,**

v.

**Lloyd A. WATKINS, James McCauley, Susan McCauley and Wendell Carl Carson, Defendants,**

**Lloyd A. Watkins, Defendant-Appellant,**

**James McCauley, Susan McCauley and Wendell Carl Carson, Defendants-Respondents.**

No. 32769.

St. Louis Court of Appeals.

Missouri.

Jan. 16, 1968.

Rehearing Denied Feb. 20, 1968.

Harold W. Barrick, New London, for defendant-appellant.

Carstarphen, Harvey & Wasinger, Hannibal, for plaintiff-respondent.

BRADY, Commissioner.

The issue in this case is whether there was sufficient evidence upon which the jury could have found a novation releasing the defendant Watkins from liability to plaintiff. The trial court held the evidence was insufficient and directed a verdict in favor of plaintiff against Watkins. It also directed verdicts in favor of the defendants McCauley and sustained a motion to dismiss as to Carson.

■ Plaintiff brought this action to recover the amount of $1,715.60 due it as a result of goods sold and services rendered in connection with the funeral of Lucille Watkins, defendant Watkins' wife. Named as other defendants were the deceased's daughter and son-in-law, Susan and James McCauley, and Wendell Carson, deceased's son. Defendant Watkins' answer alleged an agreement between himself and James McCauley whereby the latter was to pay for the items and services for which plaintiff sought recovery; plaintiff accepted this agreement; James McCauley executed an acknowledgment of his indebtedness to plaintiff and issued his check payable to plaintiff for such goods and services; plaintiff accepted the check in payment thereof; and that, as a result, the defendant Watkins was not indebted to plaintiff. It requires no citation of authority to substantiate our duty to review the evidence in the light most favorable to the defendant Wat-

kins, giving him the benefit of all favorable inferences to be reasonably drawn therefrom.

Mrs. Watkins died on February 18, 1966. Mr. Watkins, with other relatives, went to plaintiff's place of business and selected the goods and arranged for the services that constitute the basis of plaintiff's claim. Mr. Smith, an employee of plaintiff, testified Watkins told him the day before the funeral " * * * the children were going to pay the bill. That all insurance was payable to them and all the money went to them, and they were to pay the bill, and I told Mr. Watkins that it would be up to him to make those arrangements with them, and he said 'they will be here very shortly and we will go into the office and they will take care of it.' " On that same day all the parties were present in plaintiff's office and plaintiff presented an itemized list of the goods and services that made up its bill. This bill had a place upon it for the signature of the one approving the bill and any others who may approve it. The following appears thereon: "Approved by /s/ James McCauley". There is no dispute as to McCauley signing such a statement. There is a place below the signature for an address which was left blank, and immediately following that the statement reads: "Others Approving Above" and there are signature lines provided. No other signature appears thereon. Mr. Watkins was not asked to sign the statement although he and all the other parties were present. On the day of the funeral a check in the amount of $1,684.00 was delivered to plaintiff by James McCauley. This amount was for payment in full less a discount awarded. A receipted copy of the bill was delivered to James McCauley. In the evening of that same day McCauley called one of plaintiff's officers and informed him he was stopping payment on the check. The next day plaintiff inquired of its attorney as to what action it should take and on this same day the check was returned to it from the bank. On February 23rd, two days later, McCauley wrote a letter to Mr. Watkins' attorney in which he said: "Dear Sir: Lloyd & I had an arrangement where by I would pay funeral expenses occurred at Smith Funeral Home. Due to his action in connection with Mrs. Watkins personal effects & furniture, I have been advised not to pay any portion of this. The bill is $1715.00. This is more than the material value of the effects & furniture. If he will allow Susan to have these effects as Mrs. Watkins wished, I will pay funeral expenses. Approach him with this matter & if things can be worked out, let us know. James McCauley, Box 47, High Ridge, Mo." In the meantime plaintiff's officers had had several conversations with Mr. Watkins about this matter stating that if it was not paid by McCauley they were looking to him for payment. On March 3rd plaintiff wrote to Mr. Watkins stating: " * * * Today we wrote a letter to your son-in-law asking for payment of the funeral expenses of Mrs. Lucille Watkins by March 20, 1966, which is the date the account is due and payable. We also informed him we would not enter into any personal matters connected with the family. We also told him that if he did not agree and make payment of this account that he must get together with you and inform us as to when it would be paid. Lloyd, we are hopeing (sic) that this will take care of the matter, and we hope that we do not have to ask for a court decision on the matter. * * * Crawford Smith." Other than this letter plaintiff made no demand on Mr. Watkins for payment. Mr. McCauley did not pay plaintiff or release his stop order on his check and this action followed.

■ It is too elemental to require citation of authority that if reasonable minds could differ as to the evidence and reasonably believe a version of the evidence which establishes the elements of defendant's theory, the trial court was not authorized to direct a verdict.

■ Inherent in defendant Watkins' contention a novation was effected in this

case is his acceptance of the plaintiff's position that as the deceased's husband defendant was liable for her funeral expenses. There is no doubt that this was the rule at common law (see Kent v. Knight, 231 Mo. App. 235, 98 S.W.2d 318) and as it is the theory under which the parties tried this case we need not deal further with that matter. We must treat the question of the sufficiency of the pleading to raise the issue of novation in somewhat the same light. Novation is an affirmative defense which must be specially pleaded either expressly or by unequivocal implication from the allegations of the pleading. 66 C.J.S. Novation § 25. In the instant case the plaintiff does not contend the allegations of defendant's answer are insufficient to raise the issue of novation. It is obvious from the transcript and from the briefs before this court plaintiff clearly understood defendant's position as to the existence of a novation and that this was the issue tried. Accordingly, we will not comment further upon the pleading aspects of this appeal except to note that even if the parties had not joined issue upon the question of novation in the trial court the allegations of defendant's answer would seem sufficient to raise that matter.

■■■ Some general principles regarding "novation" applicable to the issues presented by this appeal will be helpful if kept in mind. " 'Novation' may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. More specifically, it is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished." 66 C.J.S. Novation § 1. See also 39 Am. Jur., Novation, § 2. It is obvious from the factual situation of the instant case the novation here, if it exists at all, involves the substitution of debtors. This form of novation is effected whenever a creditor agrees to release and extinguish his claim against a debtor and to accept in lieu there-

of the promise of a third person to discharge the obligation. Oddo v. Associated Wholesale Grocers, Inc., Mo.App., 387 S.W.2d 169, l. c. [5]172; 66 C.J.S. Novation § 18b; 39 Am.Jur., Novation, § 18. " * * * In such case, the new debtor, in consideration of the discharge of the original debtor, contracts a new obligation in favor of the creditor." Leckie v. Bennett, 160 Mo.App. 145, 141 S.W. 706, l. c. [8, 9]711. The controlling element in determining whether a novation has been accomplished is the intention of the parties. Wolfson v. Baltimore Bank of Kansas City, Mo.App., 157 S.W.2d 560; 66 C.J.S. Novation § 18e (1).

■■■ A novation is never presumed. Hutcheson & Co. v. Providence-Washington Ins. Co. of Providence, R.I., Mo.App., 341 S.W.2d 142. The burden of proof rests upon him who asserts there has been a novation. He may bear this burden either by direct evidence or circumstantially by proof of facts from which the intention to effect such an agreement may be reasonably implied. 66 C.J.S. Novation § 26d. Assent to and acceptance of the novation may be implied from the facts and circumstances attending the transaction as well as the conduct of the parties thereafter. Leckie v. Bennett, supra, 141 S.W. l. c. [10] 711; Wolfson v. Baltimore Bank of Kansas City, supra. Whether it was the intention of the parties to effect a novation is ordinarily a question for the jury unless the terms of the agreement of the parties are so clear and unequivocal that it may be ruled as a matter of law by the court. 66 C.J.S. Novation § 27.

■■■ There is no dispute between the parties as to the essentials required before a novation can be held to have occurred. The parties agree the elements are as stated above. The dispute is whether there was any evidence from which the jury, had it been allowed to consider this cause, could have found these elements present. Plaintiff contends there was none, and that a novation could not occur in the instant case as the check was not paid. We must rule the first contention against plaintiff. The evidence was all the defendants went to plain-

tiff's place of business and made the selections necessary for the funeral; plaintiff was informed that others than the defendant Watkins were to pay the bill; after being so informed and while Watkins and all the defendants were present plaintiff presented a bill for its goods and services to the defendant James McCauley who signed the bill signifying his approval; although the defendant Watkins was present he was not asked by plaintiff's officer to sign or approve the bill; thereafter a check for the full amount due less the discount awarded was delivered by James McCauley to plaintiff who accepted it; and two days later McCauley wrote a letter to Watkins' attorney in which he acknowledged that he and Watkins had an arrangement whereby McCauley would pay the funeral expenses. This constitutes evidence which, if believed by the jury, would support a finding it was the intention of the parties that Watkins was to be relieved of his primary obligation to pay for the funeral; that this obligation was to be assumed by James McCauley; and that plaintiff accepted the substitution of McCauley for Watkins as its debtor. The intention of the parties at the time of the transaction is the controlling factor and that intention may be determined from the facts and circumstances of the transaction and the conduct of the parties at the time of the transaction and thereafter. Leckie v. Bennett, supra; Wolfson v. Baltimore Bank of Kansas City, supra; 66 C.J.S. Novation § 18e (1). The issue is whether or not the intention of the parties was to effect a novation by the substitution of McCauley for Watkins as plaintiff's debtor. Watkins relies upon the facts stated above as constituting evidence from which the jury could find there was such an intention. Plaintiff's position is there was no such intention. The issue is essentially one of fact and should have been submitted to the jury.

Neither can we agree with plaintiff's contention that the check must have been paid in order for a novation to exist. The pertinent point in time, under the facts of this case, is when the parties were gathered in plaintiff's office and McCauley signed the bill. The question is: What was the intention of the parties at that time? If it was the intention Watkins should be discharged of any obligation to plaintiff who would thereafter look to McCauley, then a novation occurred and it is not affected by what happened thereafter; i. e., that McCauley did not comply with the terms of his obligation to plaintiff and pay the check. Plaintiff in its brief states that if we so hold then " * * * any debtor could defeat his just debt by getting a 'no good' to say: 'It is arranged that I will pay your debt', and then never pay it." That is neither the law nor the factual situation which should have been presented to the jury in the instant case. To the hypothesis stated by plaintiff must be added the provision that the creditor then accepts the promise (in this case a check) of the "no good", and discharges the original debtor. If he does so the fact that he has accepted a promise which may later prove uncollectible or has agreed to look to a person for payment who may later refuse to pay does not relieve the creditor from his agreement to accept the new debtor. Whether or not a novation has been effected in a particular transaction involving orders on third persons is discussed in 66 C.J.S. Novation § 18f (1), where it is said that where an obligation is discharged by the acceptance of an order or a draft on a third person a novation results.

It follows from what has been held above the trial court erred when it directed a verdict against the defendant Watkins. The judgment entered by the trial court in favor of plaintiff and against the defendant Watkins is reversed and the cause remanded to the trial court for new trial.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court for new trial.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.