355 F.Supp. 156 (1972)
CHARLES KAHN & COMPANY, a corporation, Plaintiff,
v.
Carl W. SOBERY, Defendant.
No. 71 C 789(3).
United States District Court, E. D. Missouri, E. D.
December 21, 1972.
*157 P. Terence Crebs, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for plaintiff.
Barry A. Short, King & Short, Clayton, Mo., Harry O. Moline, Jr., Thomas, Busse, Cullen, Clooney, Weil & Ottsen, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
WEBSTER, District Judge.
This suit was instituted by plaintiff, Charles Kahn & Co., in two counts. Count I alleges that defendant entered into an agreement with plaintiff whereby plaintiff would obtain a $2,175,000 loan for the development of property at 3740 Highway No. 140, St. Louis County, Missouri, that plaintiff performed under said agreement and that defendant *158 has refused to pay the two (2) per cent commission in connection therewith. Count II realleges the allegations with respect to the transaction contained in Count I and further alleges that on or about the 9th of December, 1968 defendant executed a promissory note to plaintiff in amount of $21,750.00 which remains due and unpaid.
Defendant, Carl W. Sobery, filed an Answer and Counterclaim herein admitting the execution of the contract but alleging that plaintiff failed to perform under its terms in that plaintiff failed to deliver to defendant the construction loan of $2,175,000. Defendant further alleges that he paid plaintiff $21,750.00 pursuant to said contract and prays for a judgment in that amount plus expenses allegedly expended in connection with the preparation of the property for construction in reliance on the proposed financing by plaintiff.
The case was tried to the court without a jury. Jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332.

FINDINGS OF FACT
Plaintiff Charles Kahn & Co. is a Missouri corporation having its principal place of business in the City of St. Louis, Missouri. Defendant Carl W. Sobery is a citizen and resident of Florida residing at Pompano Beach, Florida.
In early August, 1968 defendant who, together with his wife, were the owners of approximately 48 acres located at 3700-3800 North Highway 140, St. Louis County, Missouri, contacted plaintiff concerning both a construction and permanent loan for the development of the property as an apartment project. Under date of August 12, 1968 defendant and plaintiff entered into a written agreement for the making or procuring of a construction and permanent loan in the amount of $2,100,000.00 at eight per cent (8%) interest which provided among other things, the following:
"This is to be a packaged loan, that is, a complete construction and permanent loan to be made through Charles Kahn & Co., and to be disbursed by a title company to be mutually agreed upon between Charles Kahn & Co., and Carl W. Sobery. Interest on the construction loan is to be charged as funds are withdrawn and are to be paid monthly. While the interest rate on the permanent loan is to be 8% and while the interest on the construction loan is also to be 8%, however, if during the time of the opening of the loan and the time the monthly payment is to commence on the permanent loan the Federal Reserve or the bank from whom Charles Kahn & Co. borrow the money for the construction loan raise the interest rate, the owner, Carl W. Sobery hereby agrees to pay such rate as may be necessary for Charles Kahn & Co. to pay during the time of the construction of this project.
"I hereby authorize and employ Charles Kahn & Co., Inc. or assigns to make or procure the above-described First Mortgage Loan on my above described property for which I agree to pay them 2% commission, together with the necessary cost of Title Examination, insured mortgage policy, survey, recording fees, etc.
* * * * * *
"It is agreed that the owner of the property, namely, Carl W. Sobery will pay the Title Company for its disbursing charge. It is further agreed that any construction costs necessary to complete the buildings, and improvements, over and above the amount of the loan, and expenses incurred in making this loan, are to be paid by Carl W. Sobery."
Plaintiff in furtherance of his employment agreement by defendant, on November 26, 1968 secured from Metropolitan Life Insurance Company a commitment for the permanent financing in the amount of $2,175,000.00 at 8%. (The increase from $2,100,000.00 to $2,175,000.00 was occasioned by certain requirements of Metropolitan Life Insurance Company as to the type of *159 buildings to be constructed, which changes resulted in additional construction cost).
Metropolitan Life Insurance Company's commitment ran to plaintiff and provided that a 1% non-refundable commitment fee ($21,750.00) was to be paid upon acceptance of the commitment. It further provided that if the loan should not be purchased by Metropolitan Life Insurance Company because of failure to comply with the conditions of the commitment, then upon the expiration date of the commitment an additional $21,750.00, as and for liquidated damages, was to be paid by plaintiff to Metropolitan Life Insurance Company. Upon receipt of Metropolitan Life Insurance Company's commitment, plaintiff issued its written commitment to defendant for both a construction and permanent loan in the amount of $2,175,000.00 at 8%.
Plaintiff's written commitment dated December 4, 1968 was accepted by defendant on December 9, 1968, and provided among other things, the following:
"If for any reason other than the rejection by our insurance company the loan is not made pursuant to the provisions hereof, there will be payable to Charles Kahn & Co. as liquidated damages a fee of $21,750.00. This is a standby fee of 1% ($21,750.00) and is to be paid upon the issuance and signing of this commitment by Charles Kahn & Co. and Carl W. Sobery and wife. This standby fee will be returned to Carl W. Sobery or credited to him upon completion of this loan.
* * * * * *
"Non-Refundable Commitment Fee. A 1% non-refundable fee ($21,750.00) will be paid to us upon acceptance of this commitment. This fee is in addition to any liquidated damages which may later be due. . . . This commitment is not transferrable without the consent of Charles Kahn & Co. and their investor client.
CONSTRUCTION LOAN
"The construction funds on this loan are to be disbursed through St. Paul Title Insurance Corporation, . . . who upon completion of the construction loan are to issue their final insured title policy satisfactory to Charles Kahn & Co. and their investor client. Monies are to be disbursed as designated by St. Paul Title Insurance Corporation. The Title Company is to insure completion of the project and also to insure against all liens upon completion of the project. Charles Kahn & Co. are to be furnished with a certificate or title binder guaranteeing the funds disbursed with each withdrawal. If the costs of the buildings, exclusive of the land, exceeds the amount deposited with St. Paul Title Insurance Corporation, then the owner will deposit such additional funds as St. Paul Title Insurance Corporation finds necessary to complete the buildings.
* * * * * *
"This is to be a packaged loan, that is, a complete construction and permanent loan to be made through Charles Kahn & Co., and to be disbursed by St. Paul Title Insurance Corporation.
* * * * * *
"I agree to pay Charles Kahn & Co. a commission of 2% for making the combined construction and permanent loans plus necessary costs of title examination, insured mortgage title policy, survey, recording fees, etc.
* * * * * *
"It is further agreed that Carl W. Sobery and wife are to pay the St. Paul Title Insurance Corporation their escrow and disbursing fee on the above-described loans, and are also to pay all costs for recording the Deed of Trust, supporting papers, certificate of title, insured title policy, survey, etc.
"It is a condition of this construction loan that the St. Paul Title Insurance Corporation will disburse this loan *160 and guarantee payments as they are disbursed and guarantee Charles Kahn & Co. completion of the building and that all conditions relating to the construction loan will be satisfactory to them.

"It is agreed that Carl W. Sobery and wife will deposit all monies in connection with the construction of these buildings over and above the first mortgage loan with St. Paul Title Insurance Corporation prior to disbursement by Charles Kahn & Co. This includes interest, title charges, commission and all fees in connection with this loan." (Emphasis added).
Defendant in accepting plaintiff's said commitment paid plaintiff by check the sum of $21,750.00 as and for the non-refundable commitment fee above referred to; and defendant executed and delivered to plaintiff his promissory note payable March 9, 1969, in a like amount dated December 9, 1969, bearing interest from maturity at the rate of 8% per annum, as and for the standby fee above referred to.
Following acceptance of its commitment by defendant, plaintiff on December 10, 1968 accepted the commitment which it had received from Metropolitan Life Insurance Company.
In February, 1969, defendant advised plaintiff that he wanted to commence construction and needed to go forward with the construction loan; but further indicated to plaintiff that he desired to use Guaranty Land Title Company instead of St. Paul Title Insurance Corporation, which said request was acceptable to plaintiff. Plaintiff then contacted two St. Louis banks with reference to providing construction funds but was advised that such funds were not available.
In March, 1969 plaintiff contacted the Western Pennsylvania National Bank of Pittsburgh, Pennsylvania concerning its acting as the construction lender. On April 25, 1969 by letter addressed to Mark Twain State Bank of St. Louis, Missouri, Western Pennsylvania National Bank advised that if Mark Twain State Bank would take 5% of the construction loan and act as lead bank that it would participate in a loan to the extent of 95%. The rate of interest was to be 8% with a construction loan fee of 2% to be payable to the banks. The 2% construction fee to the banks was to be in addition to all other fees previously called for in the commitment. Mark Twain State Bank agreed to participate to the extent of 5% and act as lead bank with Western Pennsylvania National Bank in the making of the construction loan, and defendant was advised of this fact by Mark Twain State Bank's President at a meeting in July, 1969.
Because of the 2% construction loan fee to be paid to the banks, the lawyers for Western Pennsylvania National Bank questioned whether under Missouri law this would constitute usury. Plaintiff contacted defendant and advised him of the usury question, and defendant suggested that a Missouri corporation which he and his wife controlled, S & M Builders, Inc., could become the borrower, thus obviating the usury problem.
On July 11, 1969 plaintiff requested in writing a modification of the commitment which it had earlier obtained from Metropolitan Life Insurance Company so that S & M Builders, Inc. could become the borrower. This request for modification was approved by Metropolitan Life Insurance Company on July 28, 1969.
On or about August 7, 1969 defendant and his wife conveyed the property at 3700-3800 North Highway 140, St. Louis County, Missouri to S & M Builders, Inc.
On August 7, 1969 plaintiff wrote defendant advising that it had obtained an extension of the Metropolitan loan commitment, subject to the following conditions, among others:
"1. Actual construction must commence within 90 days from July 11, 1969.

*161 "2. The property is vested in the name of S & M Builders, Inc., a Missouri corporation.
"3. The interest rate on the permanent loan of $2,175,000.00 is to be 8½%."
with all of the other terms of plaintiff's previous commitment to remain in full force and effect. Defendant received plaintiff's letter of August 7, 1969 and became aware that the interest rate on both the construction and permanent loans would be in the amount of 8½%, and that the borrower would be his corporation, S & M Builders, Inc.
A loan closing was set for October 9, 1969 in the offices of Guaranty Land Title Company in Clayton, Missouri, and there were present at the intended closing in addition to defendant representatives of plaintiff, the title company, the Western Pennsylvania National Bank and the Mark Twain State Bank.
During the meeting of October 9, 1969 representatives of title company reviewed a breakdown of costs which had been prepared from bids obtained by Sobery. Such breakdown provided for payment out of the construction loan of 1 point for a standby fee, 1 point towards plaintiff's commission and 2 points for the construction loan to the banks, the latter representing a total amount of $43,500.00. The breakdown did not provide for the payment of interest on the construction loan. The president of the title company called defendant aside and questioned him as to what provisions he had made to pay interest on the construction loan during the term of the construction, inasmuch as the loan proceeds were insufficient to cover this item. Upon failing to receive a satisfactory explanation from defendant the president of the title company advised defendant that it would not issue its guarantee of completion of the project, which was a condition of the commitment. The president of the title company shortly thereafter apprised plaintiff's president of his position, who, in turn, advised the banks' representatives thereof.
The bankers, upon learning of the decision of the title company not to guarantee completion of the project without the deposit of interest, became concerned and discussed both among themselves and with defendant and his attorney, the general health condition of defendant. The meeting was adjourned until the next morning, at which time defendant was assured that the project could go forward provided he could obtain someone else to participate in the venture with him with sufficient ability and financial strength.
On March 27, 1970 plaintiff made demand upon defendant and not S & M Builders, Inc. for the payment of his 2% commission for obtaining both construction and permanent loan commitments, as well as for the payment of the promissory note defendant had given plaintiff, as and for the standby fee.
There is no evidence of any consideration having been received by either defendant or his wife for the transfer of the said property to the corporation controlled by defendant, S & M Builders, Inc. Following the transfer of the said property to S & M Builders, Inc. defendant was not reimbursed for the $21,750.00, the non-refundable commitment fee he had earlier paid; and defendant did not cause his $21,750.00 promissory note which he had given for the standby fee to be replaced by a note given by S & M Builders, Inc. or to be paid by it. Defendant did not, until the close of plaintiff's evidence, at any time claim that the transfer of the property from him and his wife to the corporation which he controlled, S & M Builders, Inc., constituted a novation which would, of necessity, substitute S & M Builders, Inc. and release defendant from his obligations individually under his agreements with plaintiff.

ISSUES
There are two issues determinative of this case and they are:
1. Did defendant's transfer of the property to S & M Builders, Inc., which *162 he controlled, result in a novation whereby defendant was relieved of his obligations under his agreements with plaintiff, and instead the corporation became liable for such obligations?
2. Did plaintiff produce a construction loan, and if it did, why did the construction loan fail to close?
It is plaintiff's position that it produced such a lender, but that the construction loan failed to close because of defendant's inability to satisfy the title company as to the matter of interest on the loan during the course of construction, which resulted in the title company's refusal to issue its guarantee of completion, one of the conditions of the loan commitment. On the other hand, it is defendant's position that the loan failed to close because of the bankers' fears concerning the condition of defendant's health.

CONCLUSIONS OF LAW
This Court has subject matter jurisdiction under 28 U.S.C. § 1332, in that there is diversity of citizenship and the amount in controversy exclusive of interest and costs exceeds the sum of $10,000.00. The parties are before the court.

I

NOVATION
A novation, as understood in modern law, is a mutual agreement, between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution of a new creditor. Martin v. Breckenridge, 14 F.2d 260, 262 (4th Cir. 1926), citing 20 R.C.L. § 1.
The burden of establishing that a novation occurred is upon the party claiming same. Martin v. Breckenridge, supra. See also W. Crawford Smith, Inc. v. Watkins, 425 S.W.2d 276, 279 (St.L.Ct.App.1968), and in this regard such claim is an affirmative defense under Rule 8(c) Fed.R.Civ.P. (See, Fed. R.Civ.P. 8(c); Relles v. Wines, 416 S. W.2d 19, 22 (St.L.Ct.App.1967)). Novation was never pleaded by defendant as an affirmative defense and as earlier indicated, it was not raised until defendant moved for a directed verdict at the close of plaintiff's case.
In determining whether a novation occurred, this Court must ascertain the intention of the parties at the time of the making of the new agreement. Martin v. Breckenridge, supra. In doing so, this Court may consider the facts and circumstances attending the transaction as well as the conduct of the parties thereafter, unless the plain words of a written agreement dictate conclusively a different result. W. Crawford Smith, Inc. v. Watkins, supra, 425 S.W.2d at 279-280; A. Leschen & Sons Rope Co. v. Mayflower Gold Mining & Reduction Co., 173 F. 855 (8th Cir. 1909); see also Durasteel Co. v. Great Lakes Steel Corp., 205 F.2d 438 (8th Cir. 1953).
In this case, there was no written provision that by having S & M Builders, Inc. become the borrower, defendant was to be released. Contrast Durasteel Co. v. Great Lakes Steel Corp., supra. The evidence instead reveals that S & M Builders, Inc. only became the borrower to obviate any possible usury problem. The modification in fact only provided that property was to be vested in S & M Builders, Inc. It did not affect the undertaking which defendant made to plaintiff. The modification further stipulated: "All of the other terms of our previous commitment letter dated December 4, 1968 (PX 8) are to remain in full force and effect."
The subsequent conduct of the parties through the time of trial of this case further demonstrated that it was understood between the parties that defendant continued to have obligations and duties towards plaintiff under his agreements.
(a) Defendant was not reimbursed for the non-refundable commitment fee (1%) in the amount of $21,500.00 *163 that he had paid plaintiff at the time he accepted plaintiff's commitment.
(b) Defendant did not cause the promissory note he had given plaintiff in the amount of $21,750.00 as and for the standby fee to be replaced by a note given by S & M Builders, Inc.
(c) Plaintiff at all times treated defendant as being indebted to him.
(d) As noted earlier defendant never claimed that a novation had occurred, and in fact filed a counterclaim for damages claiming that he had been damaged by plaintiff's alleged failure to make good on the commitment it had issued to him.
The Court concludes that defendant has failed to carry his burden of proof that a novation occurred and, in fact, the Court concludes from the foregoing that a novation did not occur.

II

PERFORMANCE
We come next to a consideration of the performance by plaintiff under the December 8, 1968 Agreement, as modified, and its right to recover claimed fees and commissions as a result thereof.
The court finds and concludes from the greater weight of the credible evidence that on October 9, 1969, plaintiff had obtained permanent and construction loan financing in accordance with his commitment to do so, and that his lenders were ready, willing and able to close in accordance with such commitment. The court further finds that the procuring cause of the failure to close was defendant's unwillingness or inability to deposit in escrow the interest on the construction loans for which the title company would have been responsible under the escrow and guarantee agreements called for by the commitment agreement. The commitment agreement provided that defendant would deposit such funds prior to the release by plaintiff of the loan proceeds.
It is true that this development caused concern among the lenders about defendant's attitude or defendant's capacity to perform, but failure or refusal to make the deposit was a prior default on the conditions of the loan.
Having so determined, we consider next the relief to which plaintiff has proved himself entitled. This requires a consideration of three separate items: (1) the standby fee previously paid; (2) the commitment fee; and (3) the 2% commission.
(1) The 1% standby fee of $21,750 was paid at the time of the commitment. Defendant demands its return by way of counterclaim. The commitment agreement expressly provides:
"If for any reason other than the rejection by our insurance company the loan is not made pursuant to the provisions hereof, there will be payable to Charles Kahn & Co. as liquidated damages a fee of $21,750.00. This is a standby fee of 1% ($21,750.00) and is to be paid upon the issuance and signing of this commitment by Charles Kahn & Co. and Carl W. Sobery and wife. This standby fee will be returned to Carl W. Sobery or credited to him upon completion of this loan."
Since the loan was not made due to the acts and omissions of defendant, plaintiff is entitled to retain this fee as liquidated damages and defendant is not entitled to judgment on his counterclaim.
(2) The non-refundable commitment fee is likewise expressly covered by the commitment agreement:
"Non-Refundable Commitment Fee. A 1% non-refundable fee ($21,750.00) will be paid to us upon acceptance of this commitment. This fee is in addition to any liquidated damages which may later be due."
This fee was earned upon execution of the agreement and was paid by a demand promissory note dated December 9, 1968 with interest at 8% per annum from date of execution by defendant in *164 favor of plaintiff. Plaintiff was not in breach of this agreement and no provision was made for refund in the event the loan failed to close for any other reason. Plaintiff is entitled to recover on the note under Count II of the complaint, demand having been made, and defendant is not entitled to have the note cancelled as demanded in his counterclaim.
(3) The 2% commission on the construction loan presents a somewhat more difficult question. The pertinent portion of the agreement provides:
"I agree to pay Charles Kahn & Co. a commission of 2% for making the combined construction and permanent loans plus necessary costs of title examination, insured mortgage title policy, survey, recording fees, etc."
The agreement is silent as to the obligation of defendant in the event the loan should not be closed. The clause appears to provide for consideration in addition to the fee charged for making the commitment. As such, it requires separate scrutiny. The evidence discloses no liability which plaintiff incurred to others (the banks) as a result of the failure of defendant to close the loan. It is stated to be a "commission" "for making the combined construction and permanent loans." (Emphasis added). "The word `commission', when used to denote compensation for work performed, as is ordinarily understood, means compensation paid upon results achieved." American Nat. Ins. Co. v. Keitel, 353 Mo. 1107, 186 S.W.2d 447 (1945). Whether a broker becomes entitled to his commission upon the completion of the specific acts he agreed to do depends upon the terms of his contract. Wolcott v. Moser, 364 Mo. 443, 262 S.W.2d 620, 625 (1953); Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453, 458 (1932); Pratt v. Irwin, 189 S.W. 398, 399 (Mo.App. 1916). Plaintiff prepared the commitment letter agreement, and it must be more strictly construed against him. The defendant was not in privity with the lending agencies; any obligation assumed by defendant under the agreement must be found in its terms.
The loans were not made because defendant failed to meet a condition precedent to disbursement. While under certain circumstances a broker may be entitled to his commissions where the promisor prevents or hinders the occurrence, see Spitcaufsky v. Guignon, 321 S.W.2d 481, 487 (Mo.1959), there are significant differences here. First, plaintiff made no effort to enforce or insist upon performance, and in fact acquiesced by seeking to restructure another deal, with a relative of defendant adding financial stability. Second, the provisions for the standby fee and the commitment fee expressly provide for payment in event of defendant's failure to close, while the commission clause for making the loan contains no such provision, permitting an inference that no commission payment was intended without closing. Third, the standby fee paid in advance by note was expressed to be "liquidated damages" in the event the loan was not made "for any reason other than the rejection by our insurance company. . . ." Having thus contracted for liquidated damages, it is unreasonable to assume that the parties also agreed that plaintiff should receive a 2% commission in addition to a commitment fee, and liquidated damages, whether or not the loan was closed. The terms of the commitment govern, and plaintiff is not entitled to recover the 2% commission fee.