Charles V. WILSON, Jr. and Phyllis M. Wilson, Respondents,

v.

MIDSTATE INDUSTRIES, INC., Appellant.

No. WD 41335.

Missouri Court of Appeals, Western District.

Sept. 26, 1989.

Robert L. Hyder, Jefferson City, for appellant.

. Dale C. Doerhoff, Jefferson City, for respondents.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

SHANGLER, Presiding Judge.

The defendant Midstate Industries, Inc. appeals from a judgment entered by the Associate Division of the Cole County Circuit Court in favor of the plaintiffs Wilson for $10,000 with interest for breach of contract.

The subject of the contract was the sale of the business, Wilson Foods, a proprietorship owned by the Wilsons, husband and wife, to Midstate Industries. The contract, executed on February 1, 1985, was the agreement of the Wilsons to sell the business to Midstate Industries, Inc., and of the purchaser to pay the consideration of $175,000 for the real estate and fixtures and an additional $120,000 for the business equipment. The owners Wilson agreed also not to compete for a period of three years, and for this covenant Midstate Industries agreed to pay $30,000 at the rate of $10,000 per year, the payments due on March 1 of 1986, 1987 and 1988. The contract also provided that Charles Wilson would work for Midstate Industries from March 1, 1985, to February 18, 1986 for $400 per week and a car allowance.

Midstate Industries discharged the obligations of the contract to pay $175,000 for the real estate and fixtures and to pay $120,000 for the business equipment. The payments of $10,000 due on March 1, 1986, and on March 1, 1987, were also made. All the performance owed by the sellers to the purchaser—noncompetition and the stint of employment by Charles Wilson for Midstate Industries—was completed. All the performance owed by the purchaser to the sellers was also completed, except the payment of $10,000 due on March 1, 1988. That obligation was the subject of the suit adjudicated by the associate circuit judge and now before us on appeal.

Midstate Industries then undertook to sell the business, formerly Wilson Foods, to Midstate–Adkins Foods, Inc. As an incident of that transaction, Midstate Industries, Midstate–Adkins and the Wilsons executed their separate contract on March 1, 1986. The preface recited the earlier contract between Midstate Industries and the Wilsons and the three-year noncompetition term assumed by the Wilsons. The contract then recited:

Midstate Industries, Inc. and Midstate–Adkins Foods, Inc. have entered into a contract by which the latter is purchasing the business formerly known as Wilson's Foods and said purchaser will carry out the provisions of that contract with respect to Charles V. Wilson, Jr. and shall assume the obligation to the latter requiring payments on ~~March 1, 1986~~,[1]

---

1. The elision was initialed by the contractors.

March 1, 1987 and March 1, 1988 as payment for such agreement by Charles V. Wilson, Jr. (and Phyllis M. Wilson) not to compete.

All of the parties hereto are agreeable to such assumption and the Wilsons agree that the agreement to not compete shall remain in full force and effect as set forth in such original contract which shall be included herein by reference.

It was the testimony of Charles Wilson that he understood the subsequent agreement of March 1, 1986, to add Midstate–Adkins as an additional obligor, and not to release Midstate Industries from performance under the original agreement. In his words: "But [Midstate Industries], as far as I was concerned, he was like number one—Midstate–Adkins was number two in the contract." Mrs. Wilson acknowledged she was aware of the terms of the March 1, 1986, agreement whereby Midwest–Adkins assumed the obligation of Midstate Industries to make the payments due the Wilsons for their agreement not to compete. She responded, however, that she "really did not know what Midstate Industries and Midstate–Adkins had—what their relationship was", and so could not say "that the new company was taking over these obligations." Schenewerk, signatory for Midstate Industries on the March 1, 1986, agreement, testified that the $10,000 due March 1, 1987, was paid to the Wilsons by Midstate–Adkins, and not by Midstate Industries.

On this evidence the associate circuit judge found for the Wilsons and against Midstate Industries for $10,000 plus interest from March 1, 1988. The court articulated two grounds of judgment from the bench: (1) that consideration lacked to hold the Wilsons to the terms of the second contract, (2) consideration nevertheless assumed, the terms of the second contract do not constitute a release by the plaintiffs of Midstate Industries from their obligation under the original contract to pay the Wilsons for their noncompetition performance.

■ The question for decision by the trial court, and now to us on appeal, is whether the contract of March 1, 1986, dis-charged the duty of Midstate Industries under the original contract to pay the Wilsons for their noncompetition. That is to say, it is the question of novation. A novation is a type of substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty. *W. Crawford Smith, Inc. v. Watkins,* 425 S.W.2d 276, 279[4–6] (Mo.App. 1968); RESTATEMENT (SECOND) OF CONTRACTS § 280 (1981). The elements of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract. *Lawson v. Estate of Slaybaugh,* 619 S.W.2d 910, 913[3, 4] (Mo.App.1981); 66 C.J.S. Novation § 3.

■ The defendant here, Midstate Industries, Inc., claims release from obligation to the Wilsons under the original contract by the "new undertaking altogether" of March 1, 1986, among Midstate Industries, Inc., Midstate–Adkins and the Wilsons—whereby Midstate–Adkins received "a direct benefit" and the Wilsons received "a new consideration from a new contract." In effect, the defendant Midstate Industries posits a novation by substitution of debtors. A novation of debtors occurs whenever a creditor agrees to release and extinguish a claim against a debtor and to accept in lieu the promise of a third person to discharge the obligation. *Robertson v. Vandalia Trust Co.,* 228 Mo.App. 1172, 66 S.W.2d 193, 197[1, 2] (1934); 66 C.J.S., *Novation* § 15b (1950).

Thus, a novation is subject to the same requirements as any other valid contract, including those of assent, consideration and intention to contract. 6 Corbin on Contracts § 1293 (1962). A novation of debtors entails the mutual assent among the parties to the old and new obligations whereby the new obligation is substituted for the old. *Negbaur v. Fogel Constr. Co.,* 58 S.W.2d 346, 352 (Mo.App.1933). The consideration to support the discharge of the old duty is found in the promise to undertake the new duty. *Leckie v. Bennett,* 160 Mo.App. 145, 141 S.W. 706, 711[8, 9] (1911); RESTATEMENT (SECOND) OF

CONTRACTS § 280, *Comment* c. (1979). It is the intention of the parties to novate, therefore—and of the creditor to release all claim of liability against the original debtor—that accomplishes novation. *Smith v. Watkins,* 425 S.W.2d at 279[4–6]; 66 C.J.S. *Novation* § 18(e)(1) (1950). That is because absent such intention, a creditor may accept a new obligor as an additional debtor and nevertheless continue to hold the original debtor liable. 58 Am.Jur.2d *Novation* § 31 (1989).

■ The question on appeal is not that of consideration, but of assent to novation. That is to say, the consideration to support the discharge by Wilsons of the old duty of Midstate Industries to pay them for noncompetition can be found in the promise of Midstate–Adkins to undertake that duty as a new obligation—but only if the intention of the Wilsons can be found to extinguish the old duty and to rely entirely on the new one. The intention for novation will not be presumed, but presents a question of fact unless the terms of the agreement are conclusive. *Smith v. Watkins,* 425 S.W.2d at 279[7–10]. The needed proof may be by either direct or circumstantial evidence from which the intention for novation may be reasonably inferred. Assent may be found not only from the circumstances of the transaction, but also from the conduct of the parties thereafter. *Wolfson v. Baltimore Bank of Kansas City,* 157 S.W.2d 560, 565–566[4, 5] (Mo.App.1942); 58 Am. Jur.2d *Novation* § 58 (1989).

Neither the text of the March 1, 1986, undertaking, nor the attendant circumstances, nor the conduct of the principals thereafter proves a novation. There lacks any evidence of intention by the Wilsons to give up Midstate Industries as a debtor. The promise that Midstate–Adkins undertakes is to carry out the old obligation of Midstate Industries to the Wilsons and to assume the obligation to pay them for their noncompetition. There is no word of intention that the new obligation is a substitute for the old or extinguishes the liability of Midstate Industries to the Wilsons. There is no inference of intention other than that the Wilsons accept Midstate–Adkins as a new debtor, but continue to hold the original debtor still liable. The assumption of the old obligation by Midstate–Adkins, *simpliciter,* did not constitute an offer of novation. 6 Corbin on Contracts § 1301 (1962 rev. & Supp.1989). The text of the contract of March 1, 1986, was the full evidence of that undertaking. The defendant Midstate Industries offered no witness to explain the circumstances of that transaction, nor did Midstate–Adkins. The terms of agreement are clear, certain and without ambiguity. They do not constitute an offer of novation, nor a novation accomplished by the assent of the creditors Wilson.

■ Midstate Industries argues nevertheless that the acceptance by the Wilsons from Midstate–Adkins of $10,000 due on March 1, 1987, for their noncompetition is evidence of assent to novation. In fact, there was a dispute whether the $10,000 was paid for the noncompetition or for some other reason and whether Midstate–Adkins was the payor. In any event, payment of a debt by a third party who has assumed the obligation does not, by that fact, constitute the assent of the creditor or accomplish a novation. 58 Am.Jur.2d *Novation* § 31 (1989). The judgment for the Wilsons rests on substantial evidence and was properly entered.

■ The defendant Midstate Industries argues that the judgment to the Wilsons for $10,000 is erroneous for another reason. As we understand the point, the lack of intention for novation notwithstanding, Wilson was employed by Midstate Industries for the year beginning March 1, 1985, and could not have competed in any event. Nevertheless, the Wilsons were paid and accepted $10,000 from Midstate Industries for their noncompetition during that year, an obligation for which there was no lawful consideration. Accordingly, the argument concludes, the Wilsons were lawfully entitled to only $20,000 for their noncompetition for the three years from March 1, 1985, to March 1, 1988—a compensation already paid.

We gather from the two citations that embellish the argument that Midstate Industries attempts to defeat the judgment

by the proposition of law: "[A] promise to do that which one is already legally obligated to do cannot serve as consideration for a contract." *City of Bellefontaine Neighbors v. J.J. Kelley R. & B. Co.*, 460 S.W.2d 298, 301[1] (Mo.App.1970). The contract provision to which the argument alludes, however, was not a promise by the Wilsons to do that which they were already obligated to do. It was not an agreement to be paid again for noncompetition from the year commencing March 1, 1985, but to be paid $400 per week plus expense for his employment service to Midstate Industries.[2] A promise to pay wages for a promise to perform services suffices as consideration for a contract. *National Advertising v. Herold*, 735 S.W.2d 74, 78[4, 5] (Mo. App.1987). A promise not to compete, as a component of a sale of a business, suffices as consideration for a promise to pay for the noncompetition. *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238, 240[1, 2] (Mo.App.1976). That an employee already under a promise not to compete with the employer is also subject to the general duty to faithfully serve the interest of the employer during the period of service[3] does not render a promise to work for wages as a promise to do that which is already legally obligated, and hence insufficient as consideration to contract. If, indeed, the contract promise by Wilson to perform services for Midstate Industries for the year was subject to the incidental duty not to compete with the employer during that period—and so duplicated a promise to which he was already legally bound—the coincidence did not, on principle, nullify each promise as valid consideration for the performance promised in exchange. "The fact that part of what is bargained for would not have been consideration if that part alone had been bar-

gained for does not prevent the whole from being consideration." RESTATEMENT (SECOND) OF CONTRACTS § 80(2) (1981).

■ The argument Midstate Industries now offers for relief from the separate noncompetition and employment terms of the original contract with the Wilsons comes too late. Midstate Industries has already received the benefits of the noncompetition and labor of the Wilsons, and may not now avoid the obligation of payment. Midstate Industries is bound by the rule that a contractor who accepts benefits may be estopped to question the existence, validity and effect of the contract terms from which they derive. *Long v. Huffman*, 557 S.W.2d 911, 915[9–11] (Mo.App. 1977). To deny efficacy to the contract terms for payment to Wilsons for their noncompetition and employment performances would be to allow Midstate Industries to disaffirm a contract from which it benefitted. *Id.;* 31 C.J.S. *Estoppel* § 110(2) (1964).

The judgment is affirmed.

All Concur.

---

**2.** The provisions the ostensible argument raises are components of paragraph 2 of the contract of sale of Wilson Foods executed on February 1, 1985, between the Wilsons and Midstate Industries. One component constitutes a noncompetition agreement of the Wilsons for three years in consideration of the payment to them by Midstate Industries of $10,000 for each year. The second component constitutes the agreement by Charles Wilson to work for Midstate Industries for one year, beginning March 1,

1985. For that service, Wilson was promised $400 per week and expense. Wilson performed the promise to work during that period, and Midstate Industries performed the promise to pay for the services.

**3.** *See* generally RESTATEMENT (SECOND) OF AGENCY § 387 (1958); 53 Am.Jur.2d, *Master and Servant* § 97 (1970); 56 C.J.S., *Master and Servant* § 67 et seq.